## CARUTH v. DALLAS GAS CO. (No. 9478.)

(Court of Civil Appeals of Texas. Dallas. Jan. 16, 1926. Rehearing Denied Feb. 27, 1926.)

**1. Appeal and error ⟶927(7).**

In determining propriety of peremptory instructions at close of appellant's evidence, appellee must be deemed to have admitted truth of such evidence.

**2. Appeal and error ⟶927(7).**

In determining propriety of peremptory instructions at close of appellant's evidence, every fair inference and presumption favorable to appellant must be considered as established, and given its greatest force.

**3. Trial ⟶178.**

In passing upon motion for peremptory instruction at close of appellant's evidence, trial court must view evidence which is fairly susceptible of more than one construction in light most favorable to appellant.

**4. Libel and slander ⟶86(3) — Complaint by innuendo, charging slander in imputing violation of criminal statute by tampering with gas meter, held sufficient as against general demurrer.**

Complaint by innuendo, charging slander by officer of gas company, in stating, in presence of others, that plaintiff tampered with gas meter so that flow would not be registered, and in so doing violated criminal statute, but if she would pay certain amount nothing would be said about matter, although she would still be subject to indictment, under statute prohibiting offense that imports act of moral turpitude, *held* sufficient as against general demurrer.

**5. Libel and slander ⟶44(1)—Statements of agent of gas company, on being furnished with information that meter had been tampered with, held prima facie privileged.**

Where agents of gas company discovered meter had been tampered with in such a way that it would fail to register gas, charges that meter had been tampered with, made in connec-

tion with attempt to determine amount of gas which had not been registered and demand pay therefor, *held* prima facie privileged occasion.

**6. Libel and slander ⟶50½ — "Conditional privilege" or "qualified privilege" of occasion may be abused by making statements wholly unnecessary to accomplish lawful purpose presented by occasion.**

"Conditional or qualified privilege" of occasion may be abused by making statements wholly unnecessary to accomplish lawful purpose presented by occasion; "conditional privilege" or "qualified privilege" are terms given to occasions on which, if party avails himself thereof in lawful manner and for lawful purpose, his acts and utterances are privileged.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Qualified Privilege.]

**7. Libel and slander ⟶123(8).**

Evidence *held* for jury on whether agent of gas company, in charging meter had been tampered with and imputing violation of criminal statute, had not violated privilege.

**8. Libel and slander ⟶4 — Injurious words spoken of another are slanderous only when spoken in "malice."**

Injurious words spoken of and concerning another become slanderous only in event of malice; "malice" not necessarily importing hatred, ill will, anger, wrath, or vindictiveness, but antithesis of good faith.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Malice.]

**9. Libel and slander ⟶5, 101(1).**

Where injurious words are spoken on occasion not privileged, malice is implied, and burden is on speaker to show they were not spoken in malice.

**10. Libel and slander ⟶51(4).**

When injurious words are spoken on privileged occasion, malice is not implied, and burden rests on complaining party to show malice.

**11. Libel and slander ⟶123(6).**

Whether charge by agent of gas company, imputing violation of criminal statute in tampering with gas meter, was made with express malice *held* for jury.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by Mrs. Bennye Caruth against the Dallas Gas Company. From a judgment for defendant on a directed verdict, plaintiff appeals. Reversed and remanded.

Fred J. Dudley and Wm. Madden Hill, both of Dallas, for appellant.

Smith, Robertson & Robertson, of Dallas, for appellee.

JONES, C. J. Appellant, Mrs. Bennye Caruth, filed this suit in the district court of Dallas county against appellee, Dallas Gas Company, for damages claimed to have been suffered by reason of alleged slanderous state-

ments and charges made by its secretary, R. G. Soper. At the conclusion of appellant's testimony, the trial court granted appellee's motion for peremptory instructions in its favor, and, on an instructed verdict, judgment in favor of appellee was entered.

Appellant duly excepted to this action of the court, and has presented her contentions to this court by appropriate assignments of error and propositions of law. Appellee duly filed cross-assignments of error on the action of the court in overruling its general demurrer to appellee's petition and in overruling special exceptions to certain portions of said petition. Its contention in respect thereto is also appropriately presented to this court.

Because of such cross-assignments of error, it has become necessary to set out certain portions of appellant's petition, and to state with that degree of particularity usually not necessary other portions of said petition. Because of the fact, also, that peremptory instructions in appellee's favor were given by the trial court, a full statement of the evidence has become necessary.

Appellee alleged that she had been engaged in operating a boarding and rooming house for about two years at 715 Mastin street in the city of Dallas, and that on the 19th day of June, 1923, appellee stopped the supply of natural gas which had theretofore been furnished her under contract made when she moved into said premises; that during all the time she had used said premises she had never been in arrears or delinquent in the payment of her gas bills, and was not in arrears or delinquent at the time said gas was cut off; that some days previous thereto she had been notified by appellee that her supply of gas would be cut off; and that further gas would not be furnished her. The allegations constituting the charge of slander as a basis for the damages sought are as follows:

"That on or about the 15th day of June, 1923, an agent and representative of defendant gas company, whose name is unknown to this plaintiff, but who is well known to this defendant, directed plaintiff's son that the gas meter on plaintiff's premises had the appearance of having been tampered with, and that, if plaintiff desired to further continue receiving gas at her premises, she go to the office of defendant gas company and talk to one R. G. Soper, secretary of defendant gas company, and that this plaintiff at said time was sick in bed, and unable to go to the office of defendant gas company, but, in compliance with defendant agent's directions, plaintiff sent her son to the office of defendant gas company in the city of Dallas, and that accompanying her son was one F. C. Kelly, who had also been advised that the meter on plaintiff's premises had the appearance of having been tampered with. That they were referred to one R. G. Soper, secretary of defendant gas company, as the person in charge and having authority to adjust said matter, and said Ralph Caruth stated to said R. G. Soper that he represented his mother, plaintiff herein, and that the said R. G. Soper, secretary of defendant

gas company, with full knowledge that plaintiff herein was the occupant and manager, and had control of said premises on which said meter was located, and that said meter had the appearance of being tampered with in the exercise of his authority and power over such matters, in explanation of and relative to the reasons why said gas supply would be cut off, in the presence and hearing of said F. C. Kelly, maliciously and falsely stated to plaintiff's son as follows: 'The meter has been tampered with' (meaning to say, and was so understood as saying, that this plaintiff had been tampering with said meter), 'and gas used that was not registered and paid for.' 'There is a difference of $63 between this year's bill and last year's which you owe us' (meaning to say, and was so understood as saying, that plaintiff had prevented said meter from duly registering the quantity of gas supplied). 'Now, if you will pay $100' (meaning to say, and was so understood as saying, that, if plaintiff would pay the defendant gas company $100), 'we will let the gas stay on, but you are still subject to indictment' (meaning to say, and was so understood as saying, that plaintiff had violated the criminal laws of this state, and was subject to indictment). 'Paying this $100 will not relieve you from that' (meaning to say, and was so understood as saying, that, if plaintiff would pay $100, she would be guilty of violation of the criminal laws of this state, and liable to criminal prosecution). 'I have handled some three hundred other cases of this sort' (meaning to say, and was so understood as saying, that said R. G. Soper, as representative of defendant gas company, had handled some 300 other cases where persons had been guilty of the violation of the criminal laws of this state), 'and they have not failed to come through' (meaning to say, and was so understood as saying, that said parties had paid what said defendant gas company had demanded of them), 'and we have not indicted them' (meaning to say, and was so understood as saying, that said defendant gas company had not instituted criminal proceedings against said other parties). 'I want you to understand that paying this $100 you are still subject to indictment' (meaning to say, and was so understood as saying, that, although this plaintiff might pay said $100, she would still be guilty of violation of the criminal laws of this state, and subject to prosecution). 'People that pay and keep quiet, we say nothing about it' (meaning to say, and was so understood as saying, that this plaintiff had been guilty of a violation of the criminal law of this state, and that others had been guilty of a violation of the criminal laws of this state, and had paid said defendant gas company what had been demanded of them, and said defendant gas company had not indicted or criminally prosecuted them). * * *

"That on or about the 24th day of September, 1923, one A. H. Freshwater, husband of Mrs. A. H. Freshwater, who had subleased of plaintiff the said premises, went to the office of defendant gas company for the purpose of finding why said gas company had not turned on gas to said premises under application and deposit made by Mrs. Freshwater and accepted by defendant. That said A. H. Freshwater had been advised prior thereto that gas had not been supplied plaintiff because the gas meter had the appearance of having been tampered with. That

said R. G. Soper, secretary of defendant gas company, in the presence and hearing of said A. H. Freshwater, and of one other person whose name is unknown to plaintiff, and wholly unconnected with this transaction, in the exercise of his power and authority over such matters, stated: 'The telephone, lights, and water are still in Mrs. Caruth's name' (meaning to say, and was so understood as saying, that said lease was a subterfuge whereby this plaintiff was to obtain gas service). 'If Mrs. Caruth will pay $50, that will close it for the time rather than go to law' (meaning to say, and was so understood as saying, that this plaintiff was guilty of criminal offenses, and that, if she could pay $50, she would not be prosecuted). 'Her boy was up here, and I took it from his conversation that he knew what was going on' (meaning to say, and was so understood as saying, that this plaintiff had been committing a criminal offense, and had been guilty of swindling defendant gas company out of gas, and that her boy knew it)."

The petition also alleges, in effect: That the purpose, intent, and motive of the said Soper in making the declarations were to injure, slander, and defame appellant, and to force her to comply with the unjust and arbitrary demands and exactions of appellee, and that said statements were calculated to do so, in that they charged her with violation of the criminal laws of the state, and threatened her with indictment by reason of such violation, unless money that she did not owe was paid; that the action of said Soper was done in furtherance of the interest, welfare, and on behalf of appellee in his capacity as agent, representative, and officer of appellee; that said statements were untrue and false, and were wantonly and maliciously made for the unlawful purpose of coercing her into meeting the unwarranted demands of appellee in the respects above mentioned. Appropriate allegations are made in reference to the damage to appellee in her character and in her business of conducting a boarding and rooming house.

The special exceptions of appellee, overruled by the court and forming the basis of cross-assignments of error, were leveled at each innuendo because same was improper, contrary to the plain meaning of the words alleged, and also, for the reason that the understanding of the allegations was improper because said words did not constitute slander or give any basis for a recovery. Special exceptions are also leveled against appellant's allegations as to the intention and motive of the said Soper in making the several statements and charges alleged in the petition, on the ground that the said statements and charges were not susceptible of the meaning attempted to be placed on same by the pleader.

Appellee's answer, in addition to the general demurrer and the said special exceptions, contained a general denial and a special plea to the effect that it was a public service corporation, furnishing gas to the inhabitants of the city of Dallas under a franchise granted by the city of Dallas and under the laws of the state; that it had the duty to perform to collect from every user of gas for the full amount of gas consumed and to be diligent in the performance of this duty. The pleadings in this respect were very full and complete. Appellee also pleaded that the occasion about which complaint is made in appellant's petition was privileged, and that its representative Soper did not exceed the privilege in the language used and the statements made. It denied specifically that its said agent on said occasion had charged appellant with the commission of any crime, or had charged her with the tilting of the meter; that all that was said and charged on said occasion was that the meter was tilted, and that gas had been used by appellant that had not been registered by the meter, and that the amount of this gas was in excess of $100, the sum attempted to be collected at said time; that these statements were made in good faith and in an effort to discharge its duty under its franchise and under the laws of the state of Texas and the ordinances of the city of Dallas. The pleadings in this respect were very full and complete.

The evidence as against the motion for peremptory instruction establishes the fact that on the 15th day of June, 1923, one of appellee's employés visited appellant's premises for the purpose of reading the gas meter; that this employé had not theretofore visited this house, and did not know the location of the meter; that appellant's minor son, Ralph Caruth, was mowing grass in the yard when said employé inquired of him as to where the gas meter was located; that the said son went with him to the kitchen, and pointed to a closet therein, and told him it was located there, and then went back to his work; that when this employé examined the meter, he discovered the same was in a tilted position, and secured in such position by means of a prop; that appellant on this day, and for some days previous thereto, had been confined to her bed and room on account of sickness; that such employé, after he had made such discovery, used the telephone at the house, and then informed the said son that his mother would have to appear at the gas company's office and make an explanation of the condition of the meter if she wanted to continue the use of gas. When the son was shown the condition of the meter, he started to remove the prop, but was warned not to do so by said employé; that this took place in the forenoon, not far from the noon hour; that the son went to his mother's room, and told her of the condition of the meter and the statement made by such employé; that, while appellant and her said son were discussing the matter, a boarder, Mr. Kelly, came to the room to inquire as to appellant's condition, and heard a portion of the conversation between the two; that he then stated that on

the night before he had gone into the closet to stop some rat holes, and, if the meter was in that condition, he was perhaps responsible for it, and that he would go with the son to the gas office as he went to his work.

Kelly and Ralph Caruth went to the appellee's office, and were directed to see R. G. Soper as the person to attend to the matter in question; said Soper being appellee's secretary and in charge of such matters. Ralph Caruth informed Soper that he had come to see him about the gas at 715 Mastin street; that his mother was sick in bed, and he was there to represent her; that she was not able to come and a man up there that morning had directed him to come to the office; that Soper inquired, "What have you been doing up there?" Ralph answered, "In what respect?" Soper replied, "Tampering with the meter." At this juncture, Kelly spoke up and said, "If there is anything wrong with the meter I am the one that caused it, I was in there last night stopping up rat holes behind the meter, perhaps I tilted it, but I don't remember leaving it tilted up"; that Soper smiled, and sarcastically replied, "That is a very likely story." When asked by Ralph Caruth what he meant, he said, "Well, I have handled some 300 other cases like this case, and I have heard stories like that before. Just recently I have had trouble up there in the same neighborhood." To this Ralph replied that such fact should not have any bearing whatever on this case. At this point Soper brought out some gas bills, and stated, after making an addition of the bills, that there was a difference of $63 in the bills for that year and the previous year, and then said, "If you will pay me $100 for gas that you have used, and which has not been registered through the meter, I won't cut your gas off." Ralph replied that he was only acting for his mother; that she was sick in bed; and that he had no authority to act in this matter at all. Soper replied, "All right, you go home and tell your mother if she will pay me $100 for gas she has used that has not been registered through the meter and paid for, I won't cut off the gas, but tell her this will not relieve her from indictment, and come back to-morrow at 1 o'clock and bring me her answer." Ralph reported the conversation to his mother, which greatly affected her, causing her to break down and cry. On the following day he returned and requested Soper to explain the whole matter to him, which elicited the reply from Soper: "There is nothing to explain. You know all about it. I told you yesterday what there is to be done. That is all there is to it." After some argument between the two, Soper agreed to accept $80, which was declined, for the reason that it would be admitting that the offense charged had been committed. Soper said there would be no receipt given if the money was paid. The gas was soon thereafter cut off from appellant's premises.

282 S.W.—22

The evidence of Ralph Caruth on the occasion of the first visit is corroborated by the evidence of Kelly, and, in addition, Kelly testified: That on the night of the 14th, when he came to the boarding house, he went into the the kitchen where he noticed a rat run into the pantry where the meter was and run through a hole in the floor by the meter. That he stopped this hole up, and, finding some other rat holes in the pantry near the meter, he got some pieces of board and tacked them over these holes. That, while he was tacking the boards over these holes, the meter would sway back and forth. That he had to swing it out of the way in order to stop the holes up. At the time he went into the closet the meter was not propped up; it was hanging straight down. That at one time the meter fell down, and he got a stick and put under it to keep it from falling down while he was working. That he did not know the effect this would have on the meter, and that when he had finished stopping the holes he went to bed, leaving the meter in the propped condition. The fact that he had actually propped the meter was not told by Kelly to Soper on the occasion in question, nor was he asked any question by Soper in reference to what he had done in the pantry.

Something like three months after this occasion, appellant contracted with Mrs. A. H. Freshwater, who, with her husband, had been a former boarder, to take over her lease for the remainder of the term, which expired in December. Under this contract, which was drawn by attorneys and reduced to writing, Mrs. Freshwater was to pay $50 to appellant for the rent of the furniture, and was to pay the rent of the building to the owner. The $50 was paid to appellant, and an application made by Mrs. Freshwater to appellee for gas to be furnished to the premises, and the required deposit made. The gas was not turned on, and Mr. Freshwater, her husband, went to the office to see why this was not done, and had an interview with Soper, with the result that Soper stated that the gas would not be turned on until the amount claimed against appellant was paid. After some conversation, the proposition was submitted that, if $50 was paid, the gas would be turned on. This was not done, as Freshwater claimed that was appellant's business and not his, and, in the conversation with Freshwater, the statement alleged in the petition was made to Freshwater and his wife.

Two servants who had worked at different times for Mrs. Caruth in the kitchen, and covering most of the time she was a tenant of the place on Mastin street, testified that they never had seen the meter in a tilted condition, and had never seen any one tampering with the meter. Appellant herself testified, denying any tampering with the meter or any attempt to tamper with it, or directing or encouraging any one else to do so, and also that she did not know that it was in the

condition found by the inspector on the occasion in question, and had never known of its being in such condition before. It was also shown by evidence that in the early part of the second year of her tenancy the stoves, some 14 in number, were repaired; that they were in a very bad condition, and the evidence warrants the conclusion that the stoves would consume a great deal more gas previous to their being repaired than they did afterwards. The family physician testified as to the condition of Mrs. Caruth on the occasion in question, and that she was confined to her room and bed.

An ordinance of the city of Dallas was introduced in evidence making it the duty of the user of gas who believed the meter was registering too high to have it tested by some one clothed with power to do so by the city of Dallas, and likewise making it the duty of appellee, if it believed the meter was not registering the amount of gas that went through it, to have it tested. Appellee did not comply with this ordinance. Appellant had used gas at these premises for approximately two years at the time this controversy arose, and had paid all bills that had been presented to her up to that time.

[1-3] When it moved for peremptory instructions at the close of appellant's evidence, appellee must be deemed to have admitted the truth of such evidence, and this evidence, as against such motion, must be given its greatest probative force. Every favorable inference fairly deducible from the evidence, and every favorable presumption fairly arising therefrom, must be considered as facts established in favor of appellant. Where this evidence is fairly susceptible of more than one construction, or where more than one inference may be reasonably drawn from it, the trial court, in passing upon such a motion, must take the view in each instance most favorable to appellant. When viewed from this standpoint, if there exists substantial evidence tending to prove a fact, or facts, necessary for appellant's recovery, it was the duty of the court to submit the case to the jury under proper instructions. This rule of law must govern this court in determining whether there was error in giving peremptory instructions in appellee's favor.

[4, 5] It will be seen from the above finding of facts that appellant established as a fact the making of the statements alleged to have been slanderous. These statements, made in reference to appellant to Ralph Caruth, and in the presence of Kelly, and later made to Freshwater, when analyzed in the light of the circumstances and facts in evidence under which they were made, are fairly susceptible of the construction placed on them by appellant by means of the innuendo in her petition. In other words, appellee's officer and agent in charge of the matter, in the presence of others, orally charged appellant with tampering with the meter in such way as to secure to her a flow of gas that would not be registered, and for which she would not be charged; that she had violated a criminal statute of this state in reference to tampering with meters, and was subject to indictment, but that, if she would pay $100 ($37 in excess of a claim based on appellee's method of calculation), nothing would be said about the matter by appellee, but that she would still be subject to indictment. The criminal statute appellant was charged with violating defines and prohibits an offense that imports an act of moral turpitude on the part of the one guilty of its violation, and there was no error in overruling the general demurrer. The tenor and effect of the innuendo in the allegation is clearly to bring out this meaning, and, as the language used is susceptible of the construction placed on it by the innuendos, the special exceptions leveled against them by appellee were properly overruled. We also think the special exceptions leveled at other portions of the pleadings were properly overruled, and we overrule all of appellee's cross-assignments of error.

[6] Was the occasion privileged? The gas meter on appellant's premises was found by an employé of appellee in a tilted condition, and apparently secured in such condition by means of a prop. The result of this was that the meter would fail to register any gas that was sent through it, and appellant would not be charged for gas used during the time the meter was in such condition. Appellee through its officer and agent Soper, had a clear right to acquaint appellant with the fact of this discovery; to charge that the meter "had been tampered with"; and to demand an explanation from her as to the cause of this tilted condition of the meter. It also had the clear right to inform appellee that, while the meter was in this condition, it had not registered the gas that she had consumed, and to determine by use of the best means available the amount of gas that had not been registered and demand pay therefor. The occasion, therefore, that brought forth the two interviews between Ralph Caruth, the son and agent of appellant, and Soper, the officer and agent of appellee, was prima facie privileged. It may also be said that the occasion that brought forth the interview between Soper and Freshwater and his wife was likewise prima facie privileged. Fuson v. Abilene Gas & Elec. Co. (Tex. Civ. App.) 219 S. W. 208. The right given a party because the occasion is privileged may be abused by his making statements and using language wholly unnecessary to accomplish the lawful purpose the occasion presents, and therefore be in excess of the privilege allowed. The term "conditional privilege," or "qualified privilege," is given by the courts to occasions similar to the one under inquiry, because the party availing himself of such an occasion must make use of it in a lawful manner and for a lawful pur-

pose, and, so long as he does this, his acts and utterances are privileged.

[7] There was an excess of the privilege allowed on the occasion in question. As we have seen, the language used by appellee's agent on said occasion is fairly susceptible of the construction, and a jury could find, that appellant was charged by means of such language with the commission of a crime defined and prohibited by statute, and such a crime that imports moral turpitude to the one guilty of its commission, and that the language used was also susceptible, and the jury could so find, of the construction that, unless a named sum of money more or less arbitrarily fixed was at once paid, appellant was threatened with prosecution for the commission of said offense. It seems to us that, if the jury believed this testimony, and allowed the construction of the language for which appellant contends, there is clearly established an excess of the privilege allowed appellee. It must be remembered that the explanation of the condition of the meter offered to appellee's said agent by the witness Kelly was summarily dismissed by said agent and the said charges made without any consideration given to such explanation. It developed on the trial of the case that a complete explanation existed which fully accounted for the condition of the meter and which fully exonerated appellant from any connection with, or knowledge of, such condition. It also developed on the trial of the case that there was offered a reasonable explanation, in the fact of the cleaning and repairing of the stoves at the beginning of the second year, of the excess of the gas used the first year by appellant over that used by her the second year. Appellee's said agent refused to consider this excess other than on the theory that appellant had "tampered with the meter." Character and good name are too sacred for the law to justify an attempt to injure or destroy same by the hasty and inconsiderate action used by appellee's agent on this occasion.

[8-10] The fact that the privilege of the occasion was exceeded does not, within itself, determine that appellant's cause of action was made out because of the abuse of the said privilege. When injurious words are spoken of and concerning another, they become slanderous only in the event they were spoken in malice. When such words are spoken on an occasion that is not privileged, the law implies malice, and the burden rests on the speaker of the words to show that they were not spoken in malice. When such words spoken on a privileged occasion, the law does not imply malice, but, on the contrary, the implication of law is that they were spoken in good faith, and the burden rests on the complaining party to show that they were spoken in malice. In other words, where there is no question of privilege, a prima facie case of slander is made out by prov-ing the injurious words, for the law then implies the necessary element of malice; but, when such words are spoken on a privileged occasion, a prima facie case of slander can only be made out by the additional proof that the spoken words were uttered through express malice. The term "malice," when used in this sense, "does not import necessarily hatred, ill will, anger, wrath, or vindictiveness, but need be no more than the antithesis of good faith." Cobb v. Garlington (Tex. Civ. App.) 193 S. W. 463.

[11] Did the evidence raise the issue as to whether the language used by appellee's said agent on the occasion in question was used in malice, as that term is herein defined? We are of the opinion that the language used in excess of the privilege, when viewed in the light of the attending circumstances, the manner in which the offered explanation of the condition of the meter was rejected, the hasty conclusion that appellant was guilty of a crime, and the spoken charge, as a consequence of this conclusion, that she had committed such crime, and the threat of a prosecution unless a sum of money was at once paid, the amount of which was arbitrarily determined by appellant, made an issue of fact for the determination of the jury as to whether the injurious statements were made on express malice. Cases cited from Texas and other jurisdictions in note, 26 A. L. R. from page 843 to 852.

We are therefore of the opinion that this case should be reserved and remanded for a new trial.

Reversed and remanded.