SALVADOR DÍAZ DE LA TORRE, Plaintiff and Appellant, *v.* PORTO RICO RY., LIGHT & POWER CO., Defendant and Appellee.

No. 8723. Argued February 11, 1944.—Decided June 20, 1944.

*José L. Novas* for appellant. *Brown, González & Newsom,* and *Carlos J. Faure,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

Salvador Díaz de la Torre sued Porto Rico Railway Light & Power Co., Inc., for damages because of alleged slanderous statements made about Díaz by José M. Prado, an employee of the defendant, in the course of the performance of his duties as such employee. The plaintiff has appealed from the judgment of the district court in favor of the defendant.

Francisco Mercado owned a house with two adjoining apartments. The plaintiff rented one and Felícita Izquierdo the other. Felícita Izquierdo obtained her electric light from the defendant at a flat rate, through facilities hooked up with

the street lights. The plaintiff had a meter in his premises and paid the defendant in accordance with his use of electric energy. Agents of the defendant came to Felícita Izquierdo's apartment and removed the electric wires therein, suspending her service, and installed in the plaintiff's apartment a device used to prevent larceny (*hurto*) of electric current. When Mercado went to the office of the defendant and asked Prado why these things had been done, Prado stated that Belén, one of the inspectors of the Company who had investigated the matter, had told him that the plaintiff was robbing the electric energy. At the trial it developed that the partition between Izquierdo's quarters and those of the plaintiff did not reach all the way to the ceiling, and that the inspectors found certain unauthorized electrical extensions and additions in Izquierdo's quarters.

The district court found the aforesaid facts, but held that the statement of Prado was conditionally privileged, and that the plaintiff could not recover from the defendant therefor, in view of the absence of a showing of "express malice" or "malice in fact".

The defendant made no effort to prove that the charge of "robbing" electric light[1] was actually true. Its principal contention was that the statement was a privileged communication.

A privileged communication is one which, except for the occasion or circumstances, would be defamatory and actionable. There can be no doubt under our statute and cases that there was imputed to the plaintiff the commission of a crime, as a layman would understand it, and that the statement herein was therefore slanderous *per se* (§3 of the Act establishing the actions of libel and slander, Code of

---

[1] We reject as frivolous the contention of the defandant that Prado did not make this charge, but only repeated what the inspector had told him. Both Prado and the inspectors performed functions within their authority and the Company is responsible therefor. (*Casanova* v. *González Padín Co.*, 47 P.R.R. 461; cases collected in footnote 18 at 20 Col. L. Rev. 30 at p. 35).

Civil Procedure, 1933 ed., p. 309, *Méndez* v. *Kraidman,* 63 P.R.R. 270, decided March 24, 1944; *Palou* v. *Ríos,* 23 P.R.R. 337; *Vélez* v. *Toraño,* 63 P.R.R. 327, decided March 28, 1944; *Mulero* v. *Martínez,* 58 P.R.R. 322). It is likewise clear that our statute has taken the lead from the common law— although, as will be seen, it has not gone the whole way— and has established privileged communications, some of which are absolute and some only conditional or qualified.

█ It is difficult to understand the law on this subject unless one keeps in mind the special, technical, and unique meaning of the words "malice" and "privilege" in the law of defamation. Putting to one side the question of absolute privilege as not involved in the instant case, we find that the chief purpose of a defendant in invoking the doctrine of qualified privilege is to place on the plaintiff the burden of proving that the statement was made with express malice, actuated by some ulterior motive or ill-will or purpose of willful injury (*Mulero* v. *Martínez, supra; Franco* v. *Martínez,* 29 P.R.R. 221, 224; *Jiménez* v. *Díaz Caneja,* 14 P.R.R. 9; *Boehm* v. *Western Leather Clothing Co.,* 161 S.W. (2d) 710, 717 (Mo., 1942)). If no such qualified privilege exists, the law "presumes" malice to exist, and therefore the plaintiff, in order to prove the requisite malice, need show no more than the statement itself, provided the communication is, as here, defamatory *per se;* malice is then implied as a matter of law from the publication of the defamatory matter.

█ The exact scope of qualified privilege in this jurisdiction in the law of slander, as distinguished from the law of libel, is not entirely clear, in view of the somewhat cryptic language of §3 of our Act defining slander as a "false and unprivileged" publication. Some confusion has arisen in the past because of the mistranslation in our Code of the original English version of this Section as a "false or illegal" publication (*Mulero* v. *Martínez, supra*). It is difficult to determine, in view of the above-describe inter-rela-

tion of "privilege" and "malice" in the law of defamation, whether "unprivileged" is a synonym for "malicious". If that be true, this court erred in stating in the *Mulero* case by way of *dictum* that under our statute malice is not a requisite in a suit for slander. This court, as already noted, made that statement because of the erroneous translation of "unprivileged" as "illegal". Be that as it may, we do not now re-examine that question. We assume, without deciding, that malice is such a requisite herein, and we address ourselves to determining whether such malice is nevertheless "presumed" under the circumstances of this case to exist under the terms of our Act.

Section 5 of the Act, which applies both to libel and to slander, reads as follows: "Malice shall be presumed to exist in any injurious communication or writing made without justifiable motive and addressed to any person other than to a relative within the third degree, or to a person whom the author has under his guardianship, or when said communication passes between persons having business in partnership or other similar association." [1b]

■■ Although that Section seems at first blush somewhat confusing, its meaning, at least as applied to the instant case, becomes fairly clear when read in the light of the law of defamation. Although the exact legal content of "without justifiable motive" may prove troublesome in other cases, we need not be concerned with that problem here, as the facts here show the imputation of a crime in lay language. Under those circumstances, we have held that in view of the fact that such a statement is defamatory *per se* and that the presumption of innocence protects the plaintiff, the requisites of a cause of action, including the provisions of §5, are thereby fulfilled (*Casanova* v. *González Padín Co., supra*, p. 468; *Mulero* v. *Martínez, supra*); that is, on such a showing the lack

---

[1b] The phrase "without justifiable motive" appearing in the English text, and which has considerable bearing on the question under consideration, is not satisfactorily translated in the Spanish version of this Section.

of a "justifiable motive" is at least *prima facie* established.[2] We wish to emphasize, however, that we have never held and we do not now hold that the sweeping doctrine of qualified privilege found in the common law and to be presently discussed in detail, was imported *in toto* into this jurisdiction merely by the use of this terse phrase—without justifiable motive—found in §5.

It is of considerably more importance for the purposes of this case to determine whether the statement of Prado was addressed to (1) any person other than to a relative within the third degree, (2) or to a person whom the author has under his guardianship, (3) or was a communication between persons having business in partnership, (4) or other similar association. If this be so, no malice is presumed to exist in the said statement; it was therefore a conditionally privileged statement; and the plaintiff cannot recover since he proved no actual malice.

The difficulty is that it becomes immediately evident that the communication involved herein can by no stretch of the imagination be fitted into any of the four categories enumerated in §5. And it should be obvious that in passing on the question of qualified privilege we are restricted by the four corners of our statute. Yet the district court found such a privilege under the circumstances of this case. How did it reach that conclusion?

The district court rested its conclusion principally on various common-law cases and authorities. We concede at once that if those authorities control here, the communication in this case was privileged. The overwhelming weight of

---

[2] We recognize that this shorthand phrase is difficult to apply. Query, if it has the same meaning, in cases other than the present case, as the much more definite provision of our Penal Code copied from California with reference to criminal libel, that "An injurious publication is presumed to have been malicious if no justifiable motive for making it is shown." (§245, Penal Code, 1937 ed.). The difficulty lies in the fact that if the civil and criminal sections mean exactly the same thing, the civil section, as thus interpreted, may be tautological. However, as that question is not before us, we leave it open.

authority at common law is to the effect that "statements made with the object of protecting some interest of the writer or speaker; statements made on a matter in which there is an interest common to the writer or speaker and the person to whom the statement is made; or statements made in the discharge of a legal, moral, or social duty" are qualifiedly privileged (Fraser, Libel and Slander, 5th ed., p. 177, as quoted in Smith, Liability of a Telegraph Company for Transmitting a Defamatory Message, 20 Col. L. Rev. 369, 372. To the same effect, Newell, Slander and Libel, 4th ed., §424, p. 450 and §432, p. 460; Restatement, Torts, Topic 3, Conditional privileges, p. 240, §593 *et seq.*; Jones, Interest and Duty in relation to qualified privilege, 22 Mich. L. Rev. 437; Smith, Liability of a Telegraph Company for Transmitting a Defamatory Message, 20 Col. L. Rev. 30, 369; Smith, Conditional Privilege for Mercantile Agencies, 14 Col. L. Rev. 187, 189; *Montgomery Ward & Co.* v. *Watson,* 55 F. (2d) 184 (C.C.A. 4th, 1932); *Kroger Grocery & Baking Co.* v. *Yount,* 66 F. (2d) 700 (C.C.A. 8th, 1933); *Lonergan* v. *Love,* 150 S. W. (2d) 534 (Mo., 1941); 54 A.L.R. 1143. See particularly, *Caruth* v. *Dallas Gas Co.,* 282 S. W. 334 (Tex., 1926) involving a charge of tampering with a gas meter).

■ Our difficulty is that the Legislature deliberately chose to create in §5 a qualified privilege for communications under only four sets of circumstances, none of which exists here. For us to apply those common law cases herein would be for us to create a qualified privilege in a situation for which the Legislature has not provided such a privilege. We are not at liberty to take such action, whatever we may think of its desirability as a matter of social or public interest (Cf. *People* v. *Escambrón Beach Club, Inc.,* ante, p. 731, decided June 5, 1944).

We are satisfied that the Legislature was aware that it was narrowing the common law of conditional privilege in §5. When it wished to provide for a privilege as broad as

that of the common law, the Legislature knew how to enact it. Section 251, Penal Code, 1937 ed.[3] California, from which §251 was copied, has a similarly broad Section in its Civil Code.[4] But our Section for civil cases—§5—is, as we have seen, quite different.

This is not to say that our Act requires the defendant to investigate such matters and to make statements in connection therewith at its peril. Section 4 provides that ". . . A publication or communication shall not be presumed to be malicious when made: . . . Third. To an insular official upon probable cause with the intention of serving the public interest or of securing the redress of a private wrong." If the defendant had reported this matter to the Public Service Commision, requesting permission to take the action it did at the residences of Izquierdo and the plaintiff, or if it had reported the matter to a *Fiscal* or had filed an appropriate criminal complaint, the statements made herein, if made to the appropriate officials, would have been conditionally privileged under Section 4. But for us to assimilate such a privilege to §5 requires us to read language into that Section which is not there. Whether the social policy embodied in the stricter standard of §5 is more desirable for this jurisdiction than that of the common law, is for the Legislature, not this court, to determine.

We should be less than candid if we ignored the fact that in 1926 in a case originating in the District Court of the United States for the District of Puerto Rico, our Circuit

---

(3) That Section reads as follows:

"Sec. 251.—(255 Cal.) Privileged Communication in Libel. A communication made to a person interested, in the communication, by one who was also interested or who stood in such relation to the former as to afford a reasonable ground for supposing his motive innocent, is not presumed to be malicious, and is a privileged communication."

As to whether civil and criminal libel are substantially the same at common law, see *Renfro Drug Co.* v. *Lawson*, 160 S.W. (2d) 246, 248 *et seq.* (Tex., 1942).

(4) Deering's Civil Code of California, §47, paragraph 3, p. 16; see *Swift & Co.* v. *Gray*, 101 F. (2d) 976 (C.C.A. 9th, 1939).

784

Court of Appeals applied the common-law rule of conditional privilege in a case roughly similar to the instant case. *New York & Porto Rico S. S. Co.* v. *Garcia,* 16 F. (2d) 734 (C.C.A. 1st, 1926). But that case was decided both before *Erie* v. *Tompkings,* 304 U. S. 64, (Cf. *Sweeney* v. *Schenectady Union Pub. Co.,* 122 F. (2d) 288 (C.C.A. 2d, 1941) and before the Supreme Court of the United States had "restated in more emphatic form" [5] the doctrine that this court was not to be reversed by the Circuit Court of Appeals unless it found we were inescapably wrong.

 Less than three weeks ago the Supreme Court of the United States furnished guidance on the dilemma now confronting us. That Court in *De Castro* v. *Board of Commissioner of San Juan,* 322 U. S. 451, decided May 29, 1944, said the following:

"Nor does it follow that the deference due, on appeals from the local tribunals, to their understanding of matters of local concern will lead to the establishment of a local law differing from that developed in decisions in appeals from the federal district courts sitting in our insular possessions. It is not any the less the duty of the federal courts in cases pending in the federal district court or on appeal from it to defer to that understanding, when it has found expression in the judicial pronouncements of the insular courts, (citing cases). Once understood what deference is to be paid, the problem is comparable to that presented when, upon appeals from federal district courts sitting in the states, the federal appellate courts are required to follow state law under the rule of *Erie* v. *Tompkings,* 304 U. S. 64. See *Wichita Company* v. *City Bank,* 306 U. S. 103; *Huddleston* v. *Dwyer,* No. 628, decided May 15, 1944."

In exercising the responsibility thus placed on our shoulders by the Supreme Court of the United States, we deem it our duty in this case to hold that under the circumstances herein our opinion in this case, and not that of the Circuit Court of Appeals in *New York & Porto Rico S. S. Co.* v.

---

[5] *De Castro* v. *Board of Commissioners of San Juan,* 322, U. S. 451, decided May 29, 1944.

*Garcia,* states the local law on the question of qualified privilege under our local statute.[6]

█ The plaintiff also alleges herein that when Mercado informed him of the situation, he proceeded immediately to the office of the defendant, where he inquired of Prado if the latter had made the remark in question. Prado replied affirmatively, in the presence of persons (*a*) who had accompanied the plaintiff to the office at the latter's request, and (*b*) who were at the office on business of their own. These facts raise interesting questions under the cases and our statute relating to (1) republication, (2) inviting, provoking or inducing such statements in bad faith and (3) casual bystanders (See *Montgomery Ward & Co.* v. *Watson, supra;* *New York & Porto Rico S. S. Co.* v. *Garcia, supra;* *Walgreen* v. *Cochran,* 61 F. (2d) 357 (C.C.A. 8th, 1932) ; *Ecuyer* v. *New*

---

[6] Compare *Carrasquillo* v. *Am. Missionary Association,* 61 P.R.R. 837, with *Candal de López* v. *Sociedad Española de Auxilio, etc.,* 45 F.(2d) 331 (C.C.A. 1st, 1930).

We note in passing that in his opinion in the *New York & Porto Rico S. S. Co.* case Judge Bingham cites only one case decided by this court, *Quiñones* v. *J. T. Silva Banking and Commercial Co.,* 16 P.R.R. 661. But that case, far from finding a privilege under circumstances similar to those in the *New York & Porto Rico S. S. Co.* case, specifically holds that for a qualified privilege to exist in Puerto Rico which will rebut the presumption of malice which is otherwise held to flow from a statement which is slanderous *per se,* the communication must come within the terms of § 5. *Jiménez* v. *Díaz Caneja, supra,* apparently the only other case decided by this court prior to 1926 in which the question under consideration herein was specifically involved, also limited such a privilege to the terms of § 5. The court says at p. 17: ''There is no question that the three words complained of are libelous *per se;* and malice, as well as consequent damage, would be presumed unless the defendant is brought within some one of the four exceptions mentioned in section 5 of the libel law.''

It is true that in 1934 in a case subsequent to the *New York & Porto Rico S. S. Co.* case, *Ayala* v. *Maryland Cas. Co.,* 47 P.R.R. 327, this court quoted with approval at p. 333 language from a Colorado case, *Melcher* v. *Beeler,* 110 Pac. 181, which lays down the broad common law of conditional privilege noted above. But that statement was unnecessary for the decision of that case, and we now restrict the rule to the language of our statute, as was properly done in our earlier cases (cf. *Maymí* v. *Banco Popular,* 63 P.R.R. 515, decided May 2, 1944, where we decided an analogous problem in a similar manner, although not specifically using the terminology of alleged conditional privilege).

*York Life Ins. Co.,* 172 P. 359, 363 (Wash., 1918)). If the statement thus made by Prado were the only communication alleged herein, we would be required to face and to answer these questions. But in view of the fact that we have already concluded that the plaintiff made out a case under the first statement and that the episode herein took place under the aforesaid circumstances fifteen minutes after the original episode, we shall not award any separate damages for the second episode (§131, Code of Civil Procedure).[7] We shall therefore postpone consideration of this question until some case arises where it will have more practical importance.

For the reasons stated herein, the judgment of the district court will be reversed, and a new judgment will be entered in favor of the plaintiff for $300, $100 for attorney's fees, and costs as provided by law.

---

(7) Indeed, the plaintiff himself does not set up two causes of action, but simply includes both remarks in separate paragraphs of his complaint.