SALVADOR DÍAZ DE LA TORRE, demandante y apelante, *v.* PORTO
RICO RY., LIGHT & POWER CO., demandada y apelada.

Núm. 8723.—*Sometido:* Febrero 11, 1944. *Resuelto:* Junio 20, 1944.

---

(²)*Bacó* v. *Comisión Industrial,* supra, a la pág. 872, citando del Juez Car-
dozo en *Marks' Dependents* v. *Gray,* 167 N.E. 181, 182 (N. Y., 1929).

*José L. Novas*, abogado del apelante; *Brown, Ganzález & Newsom* y *Carlos J. Faure*, abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Salvador Díaz de la Torre demandó a la Porto Rico Railway Light & Power Co., Inc., reclamándole daños y perjuicios debido a alegadas manifestaciones calumniosas dichas acerca de Díaz por José M. Prado, empleado de la demandada, en el curso del cumplimiento de sus deberes. El demandante ha apelado de la sentencia de la corte de distrito declarando sin lugar la demanda.

Francisco Mercado era dueño de una casa de dos viviendas. El demandante tenía una alquilada y Felícita Izquierdo tiene la otra. Felícita Izquierdo obtenía su energía eléctrica de la demandada a tipo fijo, estando conectada su instalación al alumbrado de la calle. El demandante tenía instalado un contador en su apartamiento y pagaba a la demandada por la cantidad de energía eléctrica que éste registraba. Los agentes de la demandada se personaron en la vivienda de Felícita Izquierdo y quitaron los alambres eléctricos que allí había, suspendiéndole el servicio, e instalando en el apartamiento del demandante un alambre concéntrico de los utilizados para impedir el hurto de energía eléctrica. Cuando Mercado fué a la oficina de la demandada y preguntó a Prado por qué se había hecho esto, Prado manifestó que Belén, uno de los inspectores de la Compañía que había investigado el asunto, le había informado que el demandante se estaba robando la energía eléctrica. Se demostró durante el juicio que el tabique que separaba la vivienda de Izquierdo de la del demandante no llegaba hasta el plafón, y que los inspectores encontraron en la vivienda de Izquierdo ciertos alambres y conexiones que ella no estaba autorizada a tener.

La corte de distrito halló probados estos hechos pero resolvió que la manifestación de Prado era privilegiada condicionalmente, y que el demandante no podía recobrar de la

demandada debido a dichas manifestaciones, en vista de que no se demostró "malicia expresa" o "malicia de hecho".

La demandada no hizo esfuerzo alguno para probar que la imputación de que se estaba "robando" energía eléctrica [1] era un hecho positivo. Su principal contención fué que la manifestación era una comunicación privilegiada.

Una comunicación privilegiada es aquella que, a no ser por la ocasión o las circunstancias, sería difamatoria y sujeta a reclamación. No puede haber duda bajo nuestra ley y nuestros casos que se imputó al demandante la comisión de un delito, según lo interpretaría un lego, y que la manifestación de que aquí se trata fué por tanto calumniosa *per se* (artículo 3 de la Ley Estableciendo las Acciones de Daños y Perjuicios por Libelo y Calumnia, Código de Enjuiciamiento Civil, Edición 1933, pág. 308; *Méndez* v. *Kraidman,* 63 D. P.R. 281, resuelto en marzo 24, 1944; *Palou* v. *Ríos,* 63 D. P.R. 363; *Vélez* v. *Toraño,* 63 D.P.R. 339, resuelto el 28 de marzo de 1944; *Mulero* v. *Martínez,* 58 D.P.R. 321). Es, asimismo, claro, que nuestro estatuto siguiendo el derecho común—aunque, como podrá verse, no ha ido tan lejos—ha establecido comunicaciones privilegiadas, algunas de las cuales son absolutas y otras solamente condicionales o restringidas.

Es difícil interpretar la Ley sobre esta materia a menos que se tenga en cuenta el significado especial, técnico y singular, de las palabras "malicia" y "privilegio" de la Ley de libelo y calumnia. Echando a un lado la cuestión de privilegio absoluto por no tratarse de ella en el presente caso, encontramos que el fin primordial de un demandado al invocar la doctrina del privilegio restringido es poner sobre el demandante el peso de la prueba en cuanto a que la ma-

[1] Rechazamos por frívola la contención de la demandada de que Prado no hizo esta imputación, sino que únicamente repitió lo que le dijo el inspector. Tanto Prado como los inspectores realizaban funciones dentro de su autoridad, y la Compañía es responsable por ellas. (*Casanova* v. *González Padín Co.,* 47 D.P.R. 488 y casos citados en el escolio 18 en 20 Col. L. Rev. 30, a la página 35.)

nifestación fué hecha con malicia expresa, motivada por alguna razón ulterior o propósito malévolo o intención de injuriar deliberadamente (*Mulero* v. *Martínez,* supra; *Franco* v. *Martínez,* 29 D.P.R. 237, 240; *Jiménez* v. *Díaz Caneja,* 14 D.P.R. 9; *Boehm* v. *Western Leather Clothing Co.,* 161 S. W. (2d) 710, 717 (Mo. 1942)). De no existir tal privilegio restringido, la ley "presume" que existe la malicia, y el demandante por tanto, para poder probar la malicia exigida, sólo tiene que probar la manifestación en sí, siempre y cuando que, como en este caso, la comunicación sea difamatoria *per se;* entonces de la publicación de la materia difamatoria se infiere la malicia como cuestión de derecho.

En esta jurisdicción el alcance exacto del privilegio restringido en la ley de calumnia, tal como se distingue de la ley de libelo, no es enteramente claro, en vista del lenguaje un poco lacónico del artículo 3 de nuestra ley al efecto de que calumnia es *"a false and unprivileged publication".*[1a] En el pasado ha surgido alguna confusión debido a la errónea traducción en nuestro Código del texto inglés original de este artículo (*Mulero* v. *Martínez,* supra). Es difícil determinar, en vista de la interrelación arriba mencionada de las palabras "privilegio" y "malicia" en la Ley de calumnia, si las palabras "no privilegiada" son sinónimas de "maliciosa". De ser cierto esto, esta corte cometió error al declarar en el caso de *Mulero,* mediante un *dictum,* que bajo nuestro estatuto la malicia no es requisito en una acción por calumnia. Como ya se ha indicado, esta corte hizo tal declaración debido a la errónea traducción de "unpriviledged" por "ilegal". Sea ello como fuere, no vamos ahora a considerar nuevamente dicha cuestión. Asumimos, sin decidirlo, que la malicia es un requisito en este caso, y procederemos a determinar si tal malicia se "presume" que existe no obs-

---

([1a]) El texto original en inglés de este artículo define la calumnia como *"a false and unprivileged publication."* La traducción del mismo en español que aparece en nuestro código como "la publicación falsa o ilegal" es errónea. Debe ser "publicación falsa y no privilegiada".

tante, a tenor con los términos de nuestra ley bajo las circunstancias de este caso.

El artículo 5 de la ley que se refiere tanto a libelo como a calumnia, dice como sigue: "se presumirá que existe malicia en cualquier comunicación o escrito infamatorio o calumnioso que se dirija a otra persona que no sea un pariente dentro del tercer grado, o a una persona a quien el autor tenga bajo su tutela, o cuando dicha comunicación se cruce entre personas que tengan negocios en sociedad, u otra asociación semejante.[1b]

Aunque dicha sección a primera vista parece algo confusa, su significado, por lo menos al aplicarse al presente caso, se torna bastante claro al leerse a la luz de la ley sobre calumnia. Aunque el significado legal preciso de las palabras "sin motivo justificable" puede ocasionar alguna dificultad en otros casos, es innecesario que nos preocupemos con dicho problema en este recurso, toda vez que aquí los hechos demuestran la imputación de un delito en lenguaje corriente. Bajo dichas circunstancias hemos resuelto que en vista del hecho de que tal manifestación es difamatoria *per se* y que la presunción de inocencia protege al demandante, los requisitos de una causa de acción, incluyendo las disposiciones del artículo 5, han sido cumplidos (*Casanova* v. *González Padín Co.,* supra, pág. 496; *Mulero* v. *Martínez,* supra); es decir, con tal prueba, la ausencia de un "motivo justificable" se estableció por lo menos *prima facie.*[2] Hacemos énfasis, sin embargo, en que nunca hemos

---

([1b])La frase *"without justifiable motive"* que aparece en el texto inglés, y que es de suma importancia en la cuestión bajo consideración, no se tradujo satisfactoriamente en el texto español de esta Sección.

([2])Reconocemos que esta corta frase es difícil de aplicar. *Quaere,* en cuanto a si tiene el mismo significado, en casos ajenos al presente, en vista de la disposición mucho más definitiva de nuestro Código Penal, copiada del de California, con referencia a libelo criminal, de que "se presumirá maliciosa toda publicación injuriosa, si no se probare que hubo motivo justificable para hacerla". (Artículo 245 Código Penal, Edición 1937). La dificultad estriba en el hecho de que si los artículos civil y penal significan exactamente la misma cosa, el artículo civil, así interpretado, podría ser tautológico. Sin embargo, como dicha cuestión no está ante nos, la dejamos sin resolver.

resuelto y no resolvemos ahora, que la doctrina general de privilegio restringido encontrada en el derecho común y que más adelante se discutirá en detalle, fué importada *in toto* a esta jurisdicción sencillamente por el uso de esta breve frase—sin motivo justificable—que se encuentra en el artículo 5.

Es de mucha más importancia a los fines de este caso que determinemos si la manifestación de Prado se dirigió a (1) alguna otra persona fuera de un pariente dentro del tercer grado, (2) o a una persona a quien el autor tenga bajo su tutela (3) o era una comunicación entre personas que tengan negocios en sociedad, (4) u otra asociación semejante. De haber sido así, se presume que no existe malicia en dicha manifestación; por tanto, ésta era una manifestación privilegiada condicionalmente; y el demandante no puede recobrar por no haber probado la malicia.

La dificultad estriba en que inmediatamente se hace evidente que la comunicación de que se trata no puede por ningún esfuerzo de la imaginación encajarse en alguna de las cuatro categorías enumeradas en el artículo 5. Y debe ser obvio que al considerar la cuestión de privilegio restringido estamos limitados al cuadro de la Ley. Sin embargo, la corte de distrito encontró tal privilegio bajo las circunstancias de este caso. ¿Cómo pudo llegar a tal conclusión?

La corte de distrito basó su conclusión principalmente en varios casos del derecho común y en algunos textos. Admitimos en seguida que de regir aquí tales autoridades la comunicación en este caso era privilegiada. El abrumador peso de autoridades en el derecho común es al efecto de que "manifestaciones hechas con el objeto de proteger algún interés del que escribe o del que habla; manifestaciones hechas sobre un asunto sobre el cual hay un interés común al que escribe o al que habla y a la persona a quien se dirige la manifestación; o manifestaciones hechas en el desempeño

de un deber legal, "moral o social" son restringidamente privilegiadas (Fraser, *Libel and Slander*, 5a. Edición, pág. 177, tal como se cita en Smith, *Liability of a Telegraph Company for Transmitting a Defamatory Message,* 20 Col. L. Rev. 369, 372. Al mismo efecto véanse Newell, *Slander and Libel,* 4a. Edición, sección 424, pág. 450 y sección 432, pág. 460; *Restatement, Torts,* Topic 3, *Conditional privileges,* pág. 240, sección 593 *et seq.*; Jones, *Interest and Duty in relation to qualified privilege,* 22 Mich. L. Rev. 437; *Smith, Liability of a Telegraph Company for Transmitting a Defamatory Message,* 20 Col. L. Rev. 30, 369; Smith, *Conditional Privilege for Mercantile Agencies,* 14 Col. L. Rev. 187, 189; *Montgomery Ward & Co.* v. *Watson,* 55 F. (2d) 184 (C.C.A. 4o. 1932); *Kroger Grocery & Baking Co.* v. *Yount,* 66 F. (2d) 700 (C. C.A. 8th, 1933); *Lonergan* v. *Love,* 150 S. W. (2d) 534 (Mo., 1941); 54 A.L.R. 1143. Véase especialmente *Caruth* v. *Dallas Gas Co.,* 282 S. W. 334 (Tex., 1926), que envolvía la imputación de intervenir con un contador.

La dificultad está en que la Legislatura deliberadamente optó por crear en el artículo 5 un privilegio restringido para comunicaciones, sólo bajo cuatro grupos de circunstancias, ninguno de los cuales existe aquí. El aplicar nosotros al presente esos casos del derecho común, equivaldría a crear un privilegio restringido en una situación para la cual la Legislatura no ha provisto tal privilegio. No estamos en libertad de tomar tal acción, no importa lo que pensemos de su conveniencia como cuestión de interés social o público (*Cf. Pueblo* v. *Escambrón Beach Club, Inc.,* ante página 761, resuelto el 5 de junio de 1944).

Estamos satisfechos en que la Legislatura se dió cuenta de que en el artículo 5 estaba limitando el privilegio condicional del derecho común. Cuando quiso proveer un privilegio tan amplio como el del derecho común, la Legislatura supo cómo hacerlo. Artículo 251, Código Penal, Edición

1937.[3]  California, de donde se copió el artículo 251, tiene un artículo igualmente amplio en su Código Civil.[4]  Pero nuestro artículo para casos civiles—Artículo 5—es, como hemos visto, bastante diferente.

Esto no quiere decir que nuestra Ley requiere que el demandado investigue tales asuntos y haga manifestaciones en relación con los mismos a su riesgo.  El artículo 4 dispone que " . . . No se presumirá que es maliciosa la publicación que se hace: . . . Tercero: a un funcionario oficial apoyada en causa probable, con la intención de servir al procomún, ó de conseguir remedio a un perjuicio hecho a un particular". Si la demandada hubiera reportado este asunto a la Comisión de Servicio Público, solicitando permiso para hacer lo que hizo en las residencias de Izquierdo y del demandante, o si hubiera reportado el asunto a un fiscal o hubiera radicado la correspondiente denuncia, las manifestaciones aquí hechas, de hacerse a los correspondientes funcionarios, hubieran sido condicionalmente privilegiadas bajo el artículo 4. Pero si intercalamos tal privilegio en el artículo 5, ello equivaldría a injertar en dicho artículo un lenguaje que no existe allí.  Si la política social contemplada en las limitaciones del artículo 5 es más conveniente a esta jurisdicción que la del derecho común, es cuestión a determinarse por la Legislatura y no por esta Corte.

No podemos hacer caso omiso del hecho de que en 1926 en un caso que se originó ante la Corte de Distrito de los Estados Unidos para Puerto Rico, nuestra Corte de Circuito

---

.([3])Dicho artículo dice como sigue:

"251—(255 Cal.) Comunicaciones Privilegiadas. Una comunicación dirigida a persona interesada en tal comunicación, por otra persona que también lo estuviere, o cuyas relaciones con aquélla justificare la suposición de haber obrado sin malicia, no deberá presumirse maliciosa, sino que se tendrá por comunicación privilegiada."

En cuanto a si el libelo civil y el criminal son sustancialmente los mismos en el derecho común, véase *Renfro Drug Co.* v. *Lawson*, 160 S.W. (2d) 246, 248, y siguientes (Tex. 1942.)

([4])Deering's Civil Code of California, Sección 47, párrafo 3, pág. 16; véase *Swift & Co.* v. *Gray*, 101 F. (2d) 976 (C.C.A. 9th. 1939).

de Apelaciones aplicó la regla del derecho común sobre privilegio condicional en un caso análogo al presente. *New York & Porto Rico S. S. Co.* v. *García*, 16 F. (2d) 734 (C.C.A. 1st. 1926). Pero dicho caso fué resuelto tanto antes del caso de *Erie* v. *Tompkings*, 304 U. S. 64, (*Cf. Sweeney* v. *Schenectady Union Pub. Co.*, 122 F. (2d) 288 (C.C.A. 2d, 1941), como antes de que la Corte Suprema de los Estados Unidos hubiera "reexpuesto en forma más enfática"[5] la doctrina de que esta Corte no deberá ser revocada por la Corte de Circuito de Apelaciones a menos que se llegara a la conclusión de que estábamos inescapablemente equivocados.

No hace tres semanas que el Tribunal Supremo de los Estados Unidos nos trazó la pauta a seguir con respecto al dilema que ahora confrontamos. Dicha corte en el caso de *De Castro* v. *Junta de Comisionados de San Juan* en_____ U.S._____, resuelto el 29 de mayo de 1944, dijo lo siguiente:

"Tampoco debe inferirse que la deferencia que deba prestarse, en apelaciones de tribunales locales, a la interpretación de éstos de asuntos de ley local, dará lugar a que se establezca una ley local diferente a la desarrollada en decisiones apeladas de las cortes de distritos federales radicadas en nuestras posesiones insulares. Tampoco es menos el deber de las cortes federales en casos pendientes ante las cortes de distrito federales o en apelación de las mismas, prestar deferencia a tal interpretación, cuando ha encontrado expresión en los pronunciamientos judiciales de las cortes insulares, (citando casos). Una vez que se sepa cuál es la deferencia que debe prestarse, puede compararse el problema con aquel que se presenta, cuando, al resolver apelaciones de las cortes de distrito federales, radicadas en los estados, se exige a las cortes federales de apelación que se ciñan a la ley estatal siguiendo la doctrina de *Erie* v. *Tompkings*, 304 U.S. 64. Véanse *Wichita Company* v. *City Bank*, 306 U.S. 103, *Huddleston* v. *Dwyer*, Núm. 628, resuelto el 15 de mayo de 1944."

Al ejercitar la responsabilidad que la Corte Suprema de los Estados Unidos ha puesto de esta manera sobre nuestros

---

(5) *De Castro* v. *Junta de Comisionados de San Juan*, \_\_\_ U. S. \_\_\_, \_\_\_, resuelto el 29 de mayo de 1944.

hombros, creemos que es nuestro deber resolver que bajo las circunstancias de este caso, esta opinión, y no la emitida por la Corte de Circuito de Apelaciones en el caso de *New York & Porto Rico S. S. Co.* v. *García,* expone la ley local sobre la cuestión de privilegio restringido bajo nuestro estatuto local.[6]

El demandante alega también que cuando Mercado le informó sobre los hechos, fué inmediatamente a la oficina de la demandada donde le preguntó a Prado si éste había hecho la manifestación de que se trata. Prado respondió en la afirmativa, en presencia de personas (*a*) que habían acompañado al demandante a la oficina a instancias suyas, y (*b*) que estaban en la oficina en gestiones personales. Estos hechos dan lugar a interesantes cuestiones de acuerdo con los casos y nuestro estatuto en relación con (1) republicación,

---

[6] Compárese *Carrasquillo* v. *Am. Missionary Ass'n.* 61 D.P.R. 867, con *Candal de López* v. *Sociedad Española de Auxilio, etc.,* 45 F. (2d) 331 (C C.A., 1st. 1930).

Indicamos de paso que en su opinión en el caso de *New York & .Porto Rico S.S. Co.* el Juez Bingham sólo cita un caso resuelto por esta Corte, *Quiñones* v. *J. T. Silva Banking & Commercial Co.,* 16 D.P.R. 696. Pero dicho caso, lejos de encontrar un privilegio en circunstancias similares a aquéllas del caso de New York & Porto Rico S.S. Co., específicamente resuelve que para poder existir en Puerto Rico un privilegio restringido que refute la presunción de malicia que de otro modo se infiere como que emana de una manifestación que es calumniosa *per se,* la comunicación debe caer dentro de los términos del artículo 5. *Jiménez* v. *Díaz Caneja,* supra, aparentemente el único otro caso resuelto por esta Corte con anterioridad al 1926, en el que la cuestión que ahora consideramos estaba específicamente envuelta, también limitó tal privilegio a los términos del artículo 5. La Corte dijo, a la página 18: ''No hay duda alguna de que las tres palabras en cuestión son difamatorias *per se;* y se presumirá la malicia lo mismo que el daño consiguiente, a no ser que el demandado esté comprendido dentro de las cuatro excepciones mencionadas en la sección 5a. de la ley de libelo . . . ''

Es cierto que en 1934 en el caso de *Ayala* v. *Maryland Casualty Co.,* 47 D.P.R. 345, posterior al de New York & Porto Rico S.S. Co. esta Corte cita con aprobación, a la página 352, lenguaje de un caso de Colorado, *Melcher* v. *Beeler,* 110 Pac. 181, que establece la amplia teoría del derecho común en cuanto a privilegio condicional arriba indicada. Pero dicha declaración era innecesaria para la decisión de dicho caso, y ahora limitamos la regla al lenguaje de nuestro estatuto, tal como se hizo correctamente en nuestros primeros casos (*Cf. Maymí* v. *Banco Popular,* 63 D.P.R. 536, resuelto el 2 de mayo de 1944, donde resolvimos en forma similar un problema análogo, aunque no se usó específicamente la terminología de un alegado privilegio condicional).

(2) el invitar, provocar o inducir tales manifestaciones de mala fe y (3) circunstantes ocasionales (véanse *Montgomery Ward & Co.* v. *Watson,* supra; *New York & Porto Rico S. S. Co.* v. *García,* supra; *Walgreen Co.* v. *Cochran,* 61 F. (2d) 357 (C.C.A. 8th. 1932); *Ecuyer* v. *New York Life Ins. Co.,* 172 P. 359, 363 (Wash., 1918)). Si la manifestación hecha allí por Prado fuera la única comunicación alegada, tendríamos que confrontarnos y contestar estas preguntas. Pero en vista del hecho de que ya hemos resuelto que el demandante estableció su caso bajo la primera manifestación y que el episodio tuvo lugar bajo las referidas circunstancias quince minutos después de ocurrido el primero, no concederemos daños separados por el segundo (artículo 131, Código de Enjuiciamiento Civil).[7] Por tanto posponemos la consideración de esta cuestión hasta que surja un caso en el que tenga una importancia más práctica.

*Por los motivos aquí expuestos, la sentencia de la corte de distrito será revocada y se dictará una nueva sentencia a favor del demandante por $300, más $100 para honorarios de abogado, y las costas según dispone la ley.*

---

[7] En verdad, el propio demandante no alega dos causas de acción, sino que sencillamente incluye en su demanda ambas manifestaciones en párrafos separados.