Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| AUTOMECA TECHNICAL COLLEGE<br><br>Apelante<br><br><br>V.<br><br><br>AMARILYS FABERY FARÍA<br><br>Apelada | KLAN202500421 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br><br>Caso Núm.: CG2023CV01022<br><br><br>Sobre: Difamación, líbelo, calumnia y daños y perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de julio de 2025.

Comparece Automeca Technical College (Automeca o apelante) y nos solicita que revoquemos la *Sentencia* emitida el 9 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI).[1] En esencia, el TPI desestimó la demanda incoada por la apelante citando con alto valor persuasivo la determinación emitida por este Tribunal de Apelaciones en el caso *Kindred Spirits, Inc. v. Randiel José Negrón Torres, infra.* Tras evaluar el expediente ante nuestra consideración, adelantamos la revocación de la *Sentencia* apelada. Veamos.

**I.**

Este caso tiene su génesis con la publicación de un artículo en el periódico El Nuevo Día el 21 de marzo de 2023, escrito por la reportera Valeria María Torres Nieves (reportera Torres Nieves). Según reportó el medio noticioso, agentes del Negociado de Drogas, Narcóticos, Control del Vicio y Armas Ilegales de la Policía (Negociado) diligenciaron dos órdenes de allanamiento en el residencial Boneville

---

[1] Notificada el 14 de abril de 2025.

Hights en Caguas. El Comandante Wilson Lebrón Otaño (Cte. Lebrón Otaño) informó que el allanamiento resultó en el arresto de dos hombres que figuraban como parte de la organización criminal de Nelson Torres Delgado, conocido como "El Burro". El Cte. Lebrón Otaño identificó a uno de los arrestados como Manuel Miranda Torres (señor Miranda Torres) e informó —**de manera preliminar**— que este laboraba como guardia de seguridad de Automeca en Caguas sin los debidos permisos para ello. Ante esta información, el Cte. Lebrón Otaño informó que referiría el caso a la sección de detectives para verificar si la compañía empleó al señor Miranda Torres y bajo qué condiciones.

El 29 de marzo de 2023, la señora Amarilys Fabery Faría (señora Fabery Faría o apelada) publicó un vídeo en vivo en sus cuentas de las redes sociales *Instagram* y *Facebook* donde realizó expresiones sobre la noticia publicada por El Nuevo Día. Específicamente, la señora Fabery Faría expresó lo siguiente:

> No se cuantos de ustedes tuvieron la oportunidad de ayer, de ver en El Nuevo día una noticia que apareció que parte de la seguridad del Instituto AutoMeca está vinculado con la Ganga de Narcotraficantes y los Gatilleros del Burro Osea "Wao Wao" y no tan solo eso que operaban sin los permisos, o sea qué tipo de regulación utilizan ese instituto para cuando contratan gente **yo no estudiaría ni trabajaría en un lugar donde la seguridad que es lo que está supuestamente verdad está guardando por mi está vinculada con el bajo mundo y más con gatilleros** [sic].

> No se si ustedes conocen la organización del Burro esa persona salió hace poco de la cárcel y han surgido un sin número de matanzas un sin número de bueno de Caguas se puso calientísimo por esta por esta persona nada más y saber que esta institución tiene que ver con [sic].

> **Osea que esa institución tiene que ver con esa ganga de gatilleros Uy no horrible horrible horrible**, yo no sé que que mas ustedes necesitan saber para **que no no tengan que ir para allá para nada** osea Padre que me escucha y a lo mejor a los jóvenes no les importa mucho porque los jóvenes uno sabe que cuando uno es joven está en esta edad de que no me importa nada y hasta lo más malo parece bueno pero **Padre que me escucha que usted si es adulto consciente y maduro tenga cuidado donde usted matricula a su hijo, tenga cuidado porque imagínese que usted vaya a estudiar a echarse un futuro hacia adelante y de momento estén buscando guardia de seguridad pa rrrrrrr rociarlo allí mismo y usted sea el que se muera yendo a estudiar por la seguridad que tienen allí fatal fatal fatal** [sic].

> **Automeca menos 10 sigue perdiendo por mucha más.** Cojan consejo y matricúlense donde se tienen que matricularse no les digo más déjense llevar. [sic].[2]

Por su parte, en o alrededor del 4 al 6 de abril de 2023, Automeca publicó un vídeo en reacción a la noticia publicada por El Nuevo Día y las expresiones hechas por la señora Fabery Faría. Por voz de la Presidenta de la institución, la señora María de los Ángeles Pagán Negrón, Automeca expresó lo siguiente:

> Automeca es una institución educativa debidamente licenciada para operar acreditada que cuenta con más de 40 años educando en Puerto Rico. Antes que todo quisiera enviarle un saludo y expresar nuestro más sincero agradecimiento a todos nuestros estudiantes, exalumnos, a sus familiares y a nuestros empleados administrativos y docentes colaboradores y al pueblo de Puerto Rico en general porque han depositado su absoluta confianza y su sueño de un mejor futuro en nuestra calidad educativa ofrecida por más de 40 años.
>
> Automeca es una institución post-secundaria de mucho prestigio que se ha guiado por los más altos estándares y valores desde su comienzo. Valores como la integridad, la ética profesional, el respeto, el compromiso con nuestra calidad educativa y otros que pocas veces han sido igualados en esta industria que nos distingue. Hoy vengo ante ustedes como debe ser de frente, representando con mucho orgullo a nuestra institución, con la intención de que conozcan de primera mano la verdad de diferentes comunicaciones negativas y mal intencionadas que se han difundido por los medios digitales en contra de Automeca. Esas expresiones se han hecho con la única intención de desacreditar, desprestigiar y manchar nuestro nombre y nuestro legado. Estas comunicaciones surgen a causa de una noticia publicada en un rotativo del país en donde se habla sobre el arresto de un individuo de parte de las autoridades en su residencia. Dicho reportaje informó que este individuo fungía como guardia de seguridad en Automeca y que ejercía ese cargo sin los debidos permisos y acreditaciones.
>
> **La realidad es que nuca fue contratado por nuestra institución. Nosotros responsablemente contratamos una compañía que se dedica a brindar servicios de seguridad privada, la cual cuenta con los debidos permisos para ejercer. Por lo que para nosotros resultó ser de igual sorpresa todo este suceso.** Como es nuestra prioridad siempre el resguardar la integridad y la seguridad de nuestros alumnos y nuestros empleados. Al enterarnos de esta situación le solicitamos formalmente a la compañía que lleve a cabo una investigación interna y a todos los efectivos de seguridad asignados a nuestra operación. Reiteramos que Automeca Technical College nunca ha tenido relación contractual alguna con ese individuo. Habiendo dejado esto claro ahora me quiero dirigir a la persona quien lamentablemente e irresponsablemente se ha agarrado de esta situación tan seria para de un [sic] manera difamatoria, públicar comunicaciones negativas en las redes sociales con el único fin de tratar de dañar nuestra reputación e imagen.

---

[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada #88. Énfasis nuestro.

Para sacar provecho y ventaja competitiva de la manera más baja, poco profesional y desleal posible. Estas son prácticas anti-éticas y comunicaciones como estas destructivas del más bajo calibre no representan ser parte de la plantilla de una institución educativa de prestigio.

No debería, tampoco aporta nada a la educación y a los valores de los jóvenes a los cuales nosotros queremos servir. En estos momentos históricos en el que Puerto Rico necesitamos un motivo de unión, nosotros hemos trabajado para tratar de unir el sector postsecundario, específicamente el no universitario. Nosotros, en vez de bajar la calidad la calidad humano y el nivel profesionalismo los invitamos apostar a lo positivo. Siempre recordando los valores como el respeto demostrar lo mejor de cada uno de nosotros a un pueblo que necesita buenos ejemplos. Agradecemos todas las muestras solidarias y la compresión recibida durante esta incómoda situación, por parte de nuestros estudiantes, padres, exalumnos, miembros del equipo de trabajo, instituciones vecinas, entidades acreditadoras y diversos profesionales, quienes reconocen nuestro legado y el serio trabajo que a diario hacemos por nuestros estudiantes. Para que se sientan orgullosos y para que junto a ellos continuemos promoviendo a Puerto Rico hacia la ruta correcta. Los exhorto a que pasen por nuestros recintos y centro, y comprueben por ustedes mismos porque a nosotros nos llaman los profesionales de la mecánica y mucho más.[3]

Así las cosas, el 4 de abril de 2023, Automeca presentó una demanda contra la señora Fabery Faría sobre libelo, calumnia, daños y perjuicios.[4] En esencia, alegó que la apelada difamó mediante libelo y calumnia a Automeca con la publicación del vídeo en sus redes sociales. Que esto expuso a la institución educativa al odio del pueblo y su desprecio. Por ello, Automeca solicitó una suma no menor de $500,000 por los daños ocasionados a su imagen. De igual forma, solicitó una suma no menor de $250,000 como partida especial de daños para gastos publicitarios con el fin de reestablecer su imagen. Todos esto, para una reclamación total de $750,000. Posteriormente, Automeca presentó *Demanda Enmendada*.[5]

La señora Fabery Faría compareció mediante *Contestación a demanda enmendada* del 27 de febrero de 2024.[6] En apretada síntesis, la apelada negó las alegaciones en su contra y alegó como defensa afirmativa su derecho a la libre expresión bajo la Primera

---

[3] SUMAC, Entrada #88. Énfasis nuestro.
[4] Véase, apéndice de la apelante, págs. 6-10.
[5] Véase, apéndice de la apelante, págs. 11-15.
[6] Véase, apéndice de la apelante, págs. 33-34.

Enmienda de la Constitución de los Estados Unidos de América, *infra*. Arguyó, además, que no realizó expresiones sobre hechos falsos y que los daños reclamados por Automeca son autoinfligidos o causados por terceras personas.

Tras varios trámites procesales, la señora Fabery Faría presentó una *Moción de Sentencia Sumaria* el 27 de enero de 2025.[7] La apelada adujo que expresó unas opiniones en sus redes sociales en respuesta a una noticia publicada en un medio de circulación general. Que estas expresiones consistieron de críticas y advertencias que dirigió hacia padres y estudiantes sobre el manejo de seguridad en Automeca. La señora Fabery Faría alegó que sus expresiones no constituían afirmaciones fácticas imputables de falsedad, sino que **eran juicios críticos basados en hechos reportados**. Adujo que sus declaraciones se enmarcaban en el ámbito de la protección constitucional como opiniones sobre un tema de interés público.

La señora Fabery Faría argumentó que sus expresiones se fundamentaron en una noticia publicada por un periódico ampliamente reconocido en Puerto Rico y en las declaraciones oficiales de un comandante de la policía. Que dichas fuentes cumplen con los estándares de confiabilidad desarrollados en nuestra jurisprudencia. La apelada alegó que **no distorsionó los hechos reportados ni actuó con negligencia al comentar sobre ellos.** Arguyó, además, que Automeca no demostró que la apelante hubiese tergiversado deliberadamente la información. Que en base a todo esto, la señora Fabery Faría alegó que sus expresiones fueron razonables y provenientes de información pública disponible, respaldadas por fuentes confiables y verificables.

La apelada señaló que Automeca no incluyó en la demanda a la reportera Torres Nieves ni al Negociado. Que estos eran parte

---

[7] Véase, apéndice de la apelante, págs. 35-58.

indispensable en el pleito y que ya había transcurrido el término prescriptivo para incluirlos en la demanda. Señaló, además, que Automeca no negó que el señor Miranda Torres era contratista independiente con la compañía Kim Security Services (Kim Security), compañía a cargo de proveer servicios de seguridad a Automeca. La señora Fabery Faría resaltó que en el artículo noticioso publicado el 21 de marzo de 2023 se reportó que el señor Miranda Torres trabajaba para Automeca, que esta última no lo negó porque es la verdad y la verdad es una defensa válida en los casos de difamación. La apelada razonó que podía editorializar la noticia dentro de la primera enmienda ya que siempre ha sido la verdad. Que, además de difundir la verdad, la señora Fabery Faría siempre expresó su opinión sobre el titular de la noticia y su opinión es una expresión protegida por la primera enmienda por lo que, no constituía difamación.

Por otro lado, la apelada alegó ser una "*influencer*" y que contaba con una audiencia de más de 62,800 seguidores en la red social *Instagram* mientras que su audiencia en la red social *Facebook* era de 9,700 seguidores. Adujo que al tener una plataforma digital con una audiencia significativa, se le podía tratar como un medio si cumplía con criterios de diseminación de información de interés público. En base a esto, la señora Fabery Faría alegó que opera un medio de comunicación no tradicional y que sus expresiones estaban sujetas al mismo estándar de protección constitucional aplicables a la prensa. La apelada arguyó que lo anterior refuerza su derecho a expresar opiniones basadas en información pública sin temor a represalias. Por todo esto, la señora Fabery Faría solicitó la desestimación de la demanda en su contra.

El 18 de febrero de 2025, Automeca presentó su *Moción en Oposición y Solicitud de Sentencia Sumaria Parcial.*[8] La apelante

---

[8] Véase, apéndice de la apelante, págs. 59-97.

arguyó que varios de los hechos presentados por la señora Fabery Faría como hechos incontrovertidos sí estaban en controversia. Específicamente, alegó que había controversia sobre la cantidad de seguidores que la apelada alegó tener en sus redes sociales y si sus expresiones constituían una *editorialización* de la noticia ya que la apelada no era reportera. Por otro lado, Automeca señaló como improcedente la alegación de la señora Fabery Faría sobre falta de parte indispensable. Aseveró que la reportera Torres Nieves y el Negociado no podían responder por los daños que provocaron las expresiones de la apelada. Automeca alegó que las expresiones de la señora Fabery Faría fueron mucho más allá de los hechos reportados por la fuente que citó la noticia. Además, adujo que la apelada responde de sus propios actos u omisiones culposas sin necesidad de incluir a terceros en el pleito.

De igual forma, Automeca alegó que contrario a lo aseverado por la apelada, sufrió daños ascendentes a $210,430.00 que se desglosan de la siguiente manera: $181,800 en concepto de diferencia en matrícula y $28,630 en concepto de gastos para enfrentar el vídeo de la señora Fabery Faría. La apelante rechazó que la señora Fabery Faría sea una "*influencer*" ya que no existía una definición en el derecho positivo vigente en nuestra jurisdicción ni en la jurisdicción federal. Además, sostuvo que era improcedente en derecho determinar que la apelada, al ser "*influencer*", debía considerársele como un medio de comunicación.

De otro lado, la apelante sostuvo que no existía controversia sobre varios hechos. Particularmente, adujo que Kim Security le prestaba servicios de seguridad a Automeca. Que el contrato suscrito entre las partes disponía que la selección de los guardias de seguridad y su contratación le correspondía a Kim Security por ser el patrono de estos. Además, sostuvo que al momento de contratar a Kim Security, Automeca le solicitó a la compañía de seguridad

evidencia de los permisos y licencias requeridos por ley, lo cual obtuvo.

La apelante también resaltó como un hecho incontrovertido que la señora Fabery Faría posee un Bachillerato en Comunicaciones y Mercadeo. Que la apelada trabaja para la empresa Artificial Intelligence como gerente de mercadeo. Señaló que la propia apelada admitió que para la fecha en que publicó el vídeo en controversia, esta le prestaba servicios a la institución educativa Mech Tech College (Mech Tech) como promotora y gerente de mercadeo. La apelada también admitió que estaba a cargo de las publicaciones en periódicos, radio, televisión, anuncios y talentos para Mech Tech. Automeca señaló, además, que la propia apelada admitió que para la fecha del 28 de marzo de 2023, esta tenía programada un *Google Alert*. Que dicha alerta le notificaba la presencia de información que tuviera temas relacionados a la apelante bajo la clave "Automeca".

En base a todo esto, Automeca arguyó que la señora Fabery Faría fue negligente al emitir las expresiones en controversia. Primeramente, resaltó que la información provista en la noticia publicada el 21 de marzo de 2023 estaba catalogada por el propio medio noticiosos como preliminar. Adujo que la señora Fabery Faría tomó la información provista en la noticia y, sin ulteriores investigaciones, procedió a publicar un vídeo donde actuó de forma difamatoria y libelosa. Automeca alegó que las expresiones de la apelada no se limitaron a la información contenida en la noticia, sino que fueron falsas y ello constituye el acto difamatorio. Esto es, que la señora Fabery Faria aseveró que Automeca tiene un vínculo con una ganga de gatilleros, que opera sin permisos, que no es un lugar confiable para matricularse y expresamente le exhortó al público a no matricularse en la institución ante el riesgo de perecer en ella. Por todo esto, Automeca le solicitó al TPI que declarara Sin Lugar la solicitud de la apelada y que declarara Ha Lugar su petición y

señalara una vista para determinar los daños causados por la apelada.

El 27 de marzo de 2025, la señora Fabery Faría presentó una *Réplica* a la oposición de Automeca.[9] En apretada síntesis, sostuvo los planteamientos esbozados en su solicitud de sentencia sumaria y recalcó que Automeca no logró demostrar la existencia de un daño real o concreto. Esto es, que la apelante no pudo vincular pérdidas económicas a las expresiones de la señora Fabery Faría.

Examinados los planteamientos esbozados, el TPI emitió su *Sentencia* el 29 de mayo de 2024 donde formuló las siguientes determinaciones de hechos:[10]

1. El día 21 de marzo de 2023 a las 12:01 pm, el periódico El Nuevo Día publicó en su edición digital (endi.com), un reportaje con el siguiente título: Arrestan en Caguas a dos hombres vinculados a la organización criminal de "El Burro". Tras ello, poseía un subtítulo: Uno de ellos laboraba como guardia de seguridad, sin los debidos permisos en una institución educativa en Caguas. El cuerpo de la noticia esbozaba: Agentes del Negociado de Drogas, Narcóticos, Control del Vicio y Armas Ilegales de la Policía diligenciaron dos órdenes de allanamiento en el residencial Boneville Hights, en Caguas, que terminaron con el arresto de dos hombres que figuraban como parte de la organización criminal de Nelson Torres Delgado, conocido como "El Burro", confirmó a El Nuevo Día el director del Negociado, Wilson Lebrón Otaño. El comandante informó que uno de los arrestados, identificado como Manuel Miranda Torres, de 40 años, fue convicto en 2012 a nivel federal y se encuentra actualmente cumpliendo probatoria. Además, Lebrón Otaño indicó preliminarmente que el denominado gatillero laboraba como guardia de seguridad de Automeca en Caguas sin los debidos permisos para hacerlo. Con esta información se referirá el caso también a la sección de detectives para verificar con la compañía si, en efecto, estaba empleando a Miranda Torres y bajo qué condiciones.

2. El 29 de marzo de 2023, la demandada realizó un video en tiempo real (live) en su red social Instagram y Facebook. En específico expresó: [n]o sé cuántos de ustedes tuvieron la oportunidad de ayer, de ver en El Nuevo Día una noticia que apareció que parte de la seguridad del Instituto Automeca está vinculado con la Ganga de Narcotraficantes y los Gatilleros del Burro Osea "Wao Wao" y no tan solo eso que operaban sin los permisos, o sea qué tipo de regulación utilizan ese instituto para cuando contratan gente yo no estudiaría ni trabajaría en un lugar donde la seguridad que es lo que esta supuestamente verdad está guardando por mi está vinculada con el bajo mundo y más con gatilleros No sé

---

[9] Véase, apéndice de la apelante, págs. 98-119.
[10] Véase, apéndice de la apelante, págs. 2-4.

si ustedes conocen la organización del Burro esa persona salió hace poco de la cárcel y han surgido un sin número de matanzas un sin número de bueno de Caguas se puso calientísimo por esta por esta persona nada más y saber que esta institución tiene que ver con Osea que esa institución tiene que ver con esa ganga de gatilleros Uy no horrible horrible horrible, yo no sé que que más ustedes necesitan saber para que no no tengan que ir para allá para nada ósea Padre que me escucha y a lo mejor a los jóvenes no les importa mucho porque los jóvenes uno sabe que cuando uno es joven está en esta edad de que no me importa nada y hasta lo más malo parece bueno pero Padre que me escucha que usted si es adulto consciente y maduro tenga cuidado donde usted matricula a su hijo, tenga cuidado polque imagínese que usted vaya a estudiar a echarse un futuro hacia adelante y de momento estén buscando guardia de seguridad pa rrrrrr rociarlo allí mismo y usted sea el que se muera yendo a estudiar por la seguridad que tienen allí fatal fatal fatal. Auto Meca menos 10 sigue perdiendo por mucha más. Cojan consejo y matricúlense donde se tienen que matricularse no les digo más déjense llevar. [sic].

3. Automeca Technical College es una corporación autorizada a realizar negocios en Puerto Rico que se dedica a la Educación Post Secundaria.

4. Como parte de sus operaciones Automeca Technical College contrató los servicios profesionales de la compañía de Seguridad Kim Securities Services, Inc. para la prestación de servicios de seguridad por medio de guardias de seguridad.

5. El contrato de seguridad suscrito entre Automeca Technical College y Kim Securities Inc., dispone el que la selección de los guardias de seguridad y su contratación corresponde a Kim Security Inc. que es el patrono de estos últimos.

6. Al momento de seleccionar la compañía de seguridad Kim Securities Inc., Automeca solicitó y obtuvo evidencia de que Kim Securities tuviera todos los permisos y licencias requeridos por ley, lo que incluyó examinar su (a) Licencia de Seguridad, (b) Certificación Oficial expedida por la Policía de Puerto Rico,(c) Certificado de Registro de Comerciante, (d) Póliza de Seguros de Seguros Múltiples (e) Certificado de Registro Corporativo del Departamento de Estado (f) Permiso de Uso de su local expedido por Oficina de Gerencia de Permisos, (g) Patente Municipal, (h) Certificación de póliza de la Corporación del Fondo del Seguro del Estado.

7. A la fecha de los hechos que dan base a la presente Demanda Kim Security, marzo 2023, contaba con las correspondientes licencias y permisos.

8. La Demandada, Amarilys Fabery Faría posee un Bachillerato en Comunicaciones y Mercadeo cursado en la Universidad Ana G. Méndez, UMET Cupey.

9. La Demandada, Amarilys Fabery Faría ha admitido que a la fechas de 28 y 29 de marzo de 2023 prestaba servicios la Institución educativa Mech Tech College en calidad de Promotora y Gerente de Mercadeo.

10. La Demandada, Amarilys Fabery Faría, ha admitido que para la fecha de 29 de marzo de 2023 realizaba como parte de sus funciones para su patrono Artificial Intelligence el trabajo de Gerente de Mercadeo de Mech Tech College.

El TPI declaró Ha Lugar la moción de sentencia sumara presentada por la señora Fabery Faría. En esencia, el foro primario determinó que las expresiones de la apelada se encontraban protegidas por nuestro ordenamiento jurídico. De manera que, el TPI acogió la solicitud de sentencia sumaria de la señora Fabery Faría sin necesidad de consignar y especificar todas las determinaciones de hechos y conclusiones de derecho adicionales. Por otro lado y conforme a la Regla 11 (D) del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, el foro de instancia citó como fuen6e de un alto valor persuasivo una Sentencia emitida por este foro intermedio apelativo en el caso *Kindred Spirits, Inc. v. Randiel José Negrón Torres, infra.*

Inconforme, Automeca acude ante nos y plantea la comisión de un único error:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA SENTENCIA SUMARIA SOLICITADA ENTENDIENTO QUE LAS EXPRESIONES DE LA DEMANDADA AMARILYS FABERY FARIA EN EL VIDEO DE 29 DE MARZO DE 2023 SON EXPRESIONES PROTEGIDAS POR EL ORDENAMIENTO JURIDICO.

La señora Fabery Faría compareció mediante escrito en oposición. Contando con la comparecencia de ambas partes, procedemos a resolver la controversia ante nuestra consideración.

**II.**

**A. Difamación**

Las acciones de difamación plantean la necesidad de balancear el derecho a la libre expresión y la libertad de prensa, que comprende el interés del Pueblo en fomentar el debate vigoroso sobre cuestiones de interés público, y el derecho a la intimidad de los individuos. *Gómez Márquez v. Periódico El Oriental, Inc.,* 203 DPR 783, 795 (2020), citando a *Maldonado y Negrón v. Marrero y Blanco,*

121 DPR 705, 713 (1988); *González Martínez v. López*, 118 DPR 190, 192 (1987).

En nuestro ordenamiento jurídico, el Artículo 1536 del vigente Código Civil, 31 LPRA sec. 10801, es la fuente de protección civil contra ataques difamatorios. *Cacho González v. Santarrosa*, 203 DPR 215, 227 (2019), citando a *Colón Pérez v. Televicentro*, 175 DPR 690, 726 (2009). La Ley de Libelo y Calumnia del 19 de febrero de 1902, 32 LPRA secs. 3141–3149, ha perdido gran parte de su importancia desde la aprobación de nuestra Constitución y subsiste tan solo en cuanto es compatible con ella. *Íd.* En *Romany v. El Mundo, Inc.*, 89 DPR 604, 617–618 (1963), se reconoció una acción en daños y perjuicios por libelo al amparo del Artículo 1802 del Código Civil de 1930, 31 LPRA sec. 5141, en la actualidad el Artículo 1536 del Código Civil, 31 LPRA sec. 10801. La justificación para ello fue que la Ley de 1902 exigía, como requisito indispensable y necesario para que se pudiera ejercitar la acción en daños y perjuicios por libelo, que la difamación fuera maliciosa, mientras que al amparo del Artículo 1802 del Código Civil, supra, es suficiente que la parte demandada haya actuado negligentemente. Así, cuando una parte no puede probar una causa de acción de libelo al amparo de la Ley de 1902, por ausencia del ingrediente de malicia, la persona perjudicada puede reclamar al amparo del Artículo 1536 del Código Civil, supra, siempre que haya mediado culpa o negligencia de la parte demandada y estuvieran presentes los demás elementos indispensables de esta causa de acción. *Colón Pérez v. Televicentro P.R.*, 175 DPR 690, 702 (2009).

La difamación ha sido definida como la expresión falsa que constituye un ataque al honor, dignidad y reputación de una persona. Una expresión difamatoria puede ocurrir mediante el libelo o la calumnia. El libelo se conoce como la difamación maliciosa que se realiza contra una persona por cualquier medio escrito de

comunicación, que tienda a exponerle a ser desacreditada, deshonrada o menospreciada. 32 LPRA sec. 3142. La calumnia, por su parte, trata de una expresión difamatoria oral. 32 LPRA sec. 3143; *Ojeda v. El Vocero de PR*, 137 DPR 315 (1994).

En una acción por difamación, el objeto de derecho es la reputación personal del sujeto injuriado públicamente, o sea, se trata del derecho de este último a defender su nombre ante los ojos de los demás, en el interés de: (1) proteger las relaciones que sostiene con terceros; (2) proteger la probabilidad de relaciones futuras con terceros; (3) proteger su imagen pública en general, y (4) evitar que se le cree una imagen pública negativa si careciere de reconocimiento público en el presente. *Soc. de Gananciales v. Vocero de P.R.*, 135 DPR 122, 126–127 (1994). Cuando quien comparece en una causa de acción por difamación es una persona privada, sólo es necesario que se demuestre negligencia. *José v. El Mundo*, 106 DPR 415 (1977).

La negligencia se ha definido como la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Colón Pérez v. Televicentro P.R., supra*; *Ramos v. Carlo*, 85 DPR 353, 358 (1962).

Los criterios que debe utilizar un tribunal para determinar, en una acción específica de difamación, si la persona demandada incurrió en negligencia al hacer la publicación alegadamente libelosa son: (1) la naturaleza de la información publicada y la importancia del asunto sobre el cual trata, especialmente si la información es libelosa de su faz y puede preverse el riesgo de daño; (2) el origen de la información y la confiabilidad de su fuente; (3) la razonabilidad del cotejo de la veracidad de la información, lo cual se determina tomando en consideración el costo en términos de dinero,

tiempo, personal, la urgencia de la publicación, el carácter de la noticia y cualquier otro factor pertinente. *Colón Pérez v. Televicentro P.R.*, supra, a la pág. 708, citando a *Torres Silva v. El Mundo, Inc.*, *supra*.

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros, supra*; *Banco Popular v. Posada*, 2024 TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. La controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra*. En otras palabras, la controversia debe ser de calidad suficiente para que sea necesario que el juzgador la dirima mediante un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Ahora bien, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros, supra*; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021). En este sentido, "[l]os tribunales, al examinar una moción de sentencia sumaria y declararla no procedente por alegadamente contener elementos subjetivos o de credibilidad, deben asegurarse que estos elementos sean un ingrediente esencial en la resolución de la controversia ante su consideración". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009). Empero, aun cuando se deben evaluar los elementos subjetivos o de intención, no se impide la utilización de la sentencia sumaria si de los documentos se desprende la inexistencia de una controversia real y sustancial sobre los hechos materiales. *Ramos Pérez v. Univisión, supra*, pág. 219; *Birriel Colón v. Econo y otro, supra*, pág. 91. Véase también Regla 36.3 (e) de Procedimiento Civil, *supra*, R. 36.3 (e). Así pues, procede dictar sentencia sumaria cuando el juzgador está claramente convencido de que tiene ante sí todos los hechos materiales de forma no controvertida y es innecesario celebrar una vista en los méritos. *Birriel Colón v. Econo y otro, supra.*

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales con evidencia sustancial. *SLG Fernández-Bernal v. RAD-MAN et al., supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Econo y otro, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). Sin embargo, la ausencia de prueba para refutar la evidencia presentada no conduce a la concesión automática de una

moción de sentencia sumaria. *Birriel Colón v. Econo y otro, supra; SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337.

En *Meléndez González et al. v. M. Cuebas, supra,* el Tribunal Supremo estableció la normativa que este Tribunal de Apelaciones debe observar al revisar las concesiones o denegatorias de una solicitud de sentencia sumaria.

En primer lugar, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar una solicitud de sentencia sumaria, por lo que está llamado a realizar una revisión *de novo,* conforme con la Regla 36 de Procedimiento Civil, *supra,* R. 36. En tal ejercicio, no se puede considerar evidencia que no se presentó ante el Foro *a quo,* y se debe examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra,* pág. 116.

En segundo lugar, el Tribunal de Apelaciones debe revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra,* R. 36 y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo, supra* y *Meléndez González et al. v. M. Cuebas, supra.*

En tercer lugar, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, se debe exponer los hechos materiales en controversia y los incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. Véase *Meléndez González et al. v. M. Cuebas, supra.*

En cuarto lugar, si el Tribunal de Apelaciones determina que no existen hechos materiales en controversia, procederá a revisar si el Foro Primario aplicó correctamente el derecho. *Íd.,* pág. 119.

Ahora respecto a la interacción del mecanismo procesal de la solicitud de sentencia sumaria y las acciones por difamación, el Tribunal Supremo ha explicado que la mayor jerarquía del derecho a la libertad de prensa y a la libre expresión ha ocasionado que sean

un tanto distintas las normas que debemos aplicar al momento de considerar una moción de sentencia sumaria en un caso de libelo. *Colón v. Televicentro, supra,* a la pág. 723, *Villanueva v. Hernández Class,* 128 DPR 618 (1991). En estos casos el propósito del aludido mecanismo procesal es evitar que la prolongación de los litigios tenga un impacto disuasivo sobre la libertad de expresión. *Colón v. Televicentro,* a la pág. 723, *Villanueva v. Hernández Class,* supra, pág. 643; *Oliveras v. Paniagua Diez,* supra, pág. 269; *García Cruz v. El Mundo,* supra, pág. 182. Por tanto, las normas aplicables a la figura procesal de la sentencia sumaria **serán interpretadas de forma más rigurosa *a favor* del medio de prensa que promueve la solicitud**. *Colón v. Televicentro,* supra, pág. 724;.*Pérez v. El Vocero de P.R., supra,* pág. 445. *Villanueva v. Hernández Class,* pág. 644.

En nuestra jurisdicción, en los casos por difamación, se ha reconocido dos formas distintas para establecer qué procede en derecho para dictar sentencia sumariamente. En primer lugar, se puede demostrar que no existe controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, los sucesos alegados no son suficientes para establecer causa de acción alguna, ya sea porque se incumplen los requisitos necesarios o se configura una defensa afirmativa. *Colón v. Televicentro, supra,* a las págs. 723–724; *Cabrero v. Zayas Seijo,* supra; *Pérez v. El Vocero de P.R., supra,* pág. 446.

Como la sentencia sumaria es parte de la protección constitucional de los medios de comunicación en los casos de libelo, **el tribunal**, en vez de examinar la evidencia que se le presente de la forma más favorable a la parte demandante promovida, **exigirá a esta mayor rigor en su oposición para que pueda derrotar la moción de sentencia sumaria de la prensa**. *Colón v. Televicentro supra,* a la pág. 724; *Pérez v. El Vocero de P.R., supra,* pág. 446.

La segunda manera en que el promovente puede cumplir con su carga inicial es alegando y demostrando que el demandante no tiene evidencia suficiente para establecer los requisitos de su reclamación, es decir, que carece de prueba para demostrar algún elemento esencial de la causa de acción. *Colón v. Televicentro, supra*, a la pág. 725; *Pérez v. El Vocero de P.R.*, *supra*, págs. 446–447; *Medina v. M.S. & D. Química P.R., Inc., supra*, pág. 727–29. Además, tiene que persuadir al tribunal de que no es necesario celebrar una vista evidenciaria y que, como cuestión de derecho, procede que se desestime la reclamación. *Colón v. Televicentro, supra*, a la pág. 725; *Pérez v. El Vocero de P.R.*, *supra*, págs. 446–447. Luego de que el promovente satisfaga este requisito, **el promovido está obligado a producir prueba específica que**, de ser admitida y creída, **demuestre todos los elementos de la causa de acción**. *Colón v. Televicentro*, supra, a la pág. 725; *Clavell v. El Vocero de P.R.*, *supra*, pág. 696.

Finalmente, hay que señalar que la prueba de la malicia real o de la negligencia debe ser clara, robusta y convincente. *Colón v. Televicentro, supra*, a la pág. 725; *Clavell v. El Vocero de P.R.*, *supra*; *Soc. de Gananciales v. López*, supra, pág. 115. Además, está establecido en nuestra jurisdicción que la suficiencia de la prueba para establecer la existencia de la negligencia en los casos de difamación en que estén envueltas personas privadas plantea una cuestión estrictamente de derecho. *Colón v. Televicentro, supra*, a la pág. 725; *Villanueva v. Hernández Class*, *supra*; *García Cruz v. El Mundo, Inc.*, 108 DPR 174, 183; *New York Times Co. v. Sullivan*, 376 U.S. 254.

### C. Privilegio del reporte justo y verdadero

En los casos por difamación, la verdad es objeto de defensa. De igual forma, existen otras defensas que dependes de la persona responsable de la publicación y la condición de esta. C. J. Irizarry

Yunqué, *Responsabilidad Civil Extracontractual: un estudio basado en las decisiones del Tribunal Supremo de Puerto Rico*, 7ma ed., San Juan, págs. 151-152. Una de estas defensas lo es la comunicación privilegiada. Nuestro Tribunal Supremo ha expresado que "[u]na comunicación privilegiada es aquella que, a no ser por la ocasión o las circunstancias, sería difamatoria y sujeta a reclamación". *Villanueva v. Hernández Class, supra,* a la pág. 646, citando a *Díaz v. P.R. Ry. Lt. & P. Co.,* 63 DPR 808, 811 (1944).

El privilegio condicional del reporte o informe justo y verdadero aplica a las recopilaciones de lo allí ocurrido que se hacen para el beneficio de la ciudadanía a través de los medios. *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 201 (2013). Este privilegio se asienta en la idea de que el reportero actúa como sustituto del público en la observación de un evento. *Villanueva v. Hernández Class, supra,* pág. 648.

Son dos los requisitos que deben estar presentes para que se pueda configurar el privilegio del reporte justo y verdadero. En primer lugar, el reportaje tiene que ser justo en relación con el proceso que es objeto de información. *Villanueva v. Hernández Class, supra,* pág. 647. El reporte es justo si captura la sustancia de lo acontecido y si toma en consideración el probable efecto que tendrá su publicación en la mente de un lector y oyente promedio. *Íd.*

El segundo elemento del privilegio consiste en que lo publicado tiene que ser cierto y reflejar la verdad de lo expresado o acontecido en el procedimiento llevado a cabo; ello aun cuando la información que se brinda en el procedimiento judicial, legislativo u oficial sea falsa o libelosa. *Íd.* **Para que se cumpla con el elemento de la veracidad de lo relatado, no es necesario que lo publicado sea exactamente "correcto", sino que bastará con que se**

**publique un extracto sustancialmente correcto de lo ocurrido**. *Íd.*

Por otra parte, si bien es cierto que este privilegio ha sido reconocido como uno de los más importantes para la protección de la prensa contra ataques de libelo, *Villanueva v. Hernández Class, supra*, pág. 649, no es menos cierto que su aplicabilidad es restringida. *Meléndez Vega v. El Vocero de PR, supra*, pág. 202. Es decir, **el privilegio no aplica si se redacta un relato parcializado y subjetivo de lo ocurrido en los procedimientos o si se prueba que el demandado publicó la información maliciosamente con ánimo prevenido, con el fin de causar daño, o con conocimiento de la falsedad de la información.** *Meléndez Vega v. El Vocero de PR, supra*, pág. 202; *Villanueva v. Hernández Class, supra*, págs. 648–649.

En resumen, el privilegio del informe justo y verdadero protege "a quien publica una información falsa o difamatoria, siempre que la misma recoja o refleje verazmente lo acontecido en los procedimientos, informes o acciones públicas u oficiales de agencias gubernamentales". *Villanueva v. Hernández Class, supra*, pág. 648.

### D. Kindred Spirits, Inc. v. Randiel José Negrón Torres

El TPI citó el caso KLCE202400048, Kindred Spirits, Inc. v. Randiel Negrón Torres, con un alto valor persuasivo. En dicho caso, Kindred Spirits, corporación dueña y operadora del restaurante Bottles (Bottles) presentó una demanda contra el Sr. Randiel José Negrón Torres (señor Negrón Torres) sobre daños y perjuicios, libelo, calumnia y difamación. En esencia, Bottles alegó que el señor Negrón Torres realizó varias expresiones públicas a través de distintos medios y redes sociales durante semanas sobre la contratación de meseros y meseras por parte de Bottles y la manera en que se les pagaba su salario. El señor Negrón Torres solicitó la desestimación de la demanda en su contra y argumentó, entre otros, que Bottles es

una figura pública; que sus expresiones y declaraciones estaban directamente vinculadas a las alegaciones contenidas en una querella sobre impago de salarios incoada contra Bottles y, por ende, estaban protegidas por el privilegio del reporte justo y verdadero. Luego de varios trámites procesales, el TPI denegó mediante *Resolución* la solicitud de desestimación presentada por el señor Negrón Torres sin fundamentar dicha determinación. En desacuerdo, el señor Negrón Torres acudió a este foro apelativo intermedio.

Un Panel hermano de este Tribunal emitió *Sentencia* en la cual revocó al foro primario y desestimó la demanda incoada por Bottles. En esencia —y en lo pertinente a la controversia ante nuestra consideración— el referido Panel razonó que de una lectura del expediente ante sí, surgía que las expresiones del señor Negrón Torres estaban contenidas en la Querellada presentada contra Bottles. Tan es así, que este Tribunal notó que el señor Negrón Torres hizo referencia a la referida Querella en sus publicaciones. De manera que, las expresiones del señor Negrón Torres no constituían una opinión parcializada o subjetiva de los hechos, sino que sus expresiones estaban sustentadas y eran extractos de varias alegaciones incluidas en la referida Querella.

**III.**

Automeca nos solicita la revocación de la *Sentencia* emitida el 9 de abril de 2025. Para ello, nos plantea la comisión de un único error. La apelante alega que el TPI erró al dictar sentencia sumaria y desestimar la demanda por entender que las expresiones vertidas por la señora Fabery Faría en el video del 29 de marzo de 2023 están protegidas por el ordenamiento jurídico. Automeca aduce que la apelada tenía derecho a difundir información sobre los hechos ocurridos. No obstante, señala que la señora Fabery Faría tergiversó la información provista en la noticia del 21 de marzo de 2023. Automeca indica que las actuaciones de la señora Fabery Faría

fueron maliciosas e iban dirigidas a dañar la imagen, reputación y valor de la institución educativa. Que esto resulta evidente si se toma en consideración que la apelada realizó estudios en mercadeo y que trabaja como gerente de mercadeo para la institución educativa que compite comercialmente con Automeca. Luego de analizar el expediente ante nuestra consideración, encontramos que se cometió el error señalado.

Es norma reiterada que en una acción por difamación, el objeto de derecho es la reputación personal del sujeto injuriado públicamente y con ello se busca: (1) proteger las relaciones que sostiene con terceros; (2) proteger la probabilidad de relaciones futuras con terceros; (3) proteger su imagen pública en general, y (4) evitar que se le cree una imagen pública negativa si careciere de reconocimiento público en el presente. *Soc. de Gananciales v. Vocero de P.R., supra.* Ahora bien, en una acción específica de difamación, los tribunales debemos dirimir si la publicación fue negligente en base a los siguientes criterios: (1) la naturaleza de la información publicada y la importancia del asunto sobre el cual trata, especialmente si la información es libelosa de su faz y puede preverse el riesgo de daño; (2) el origen de la información y la confiabilidad de su fuente; (3) la razonabilidad del cotejo de la veracidad de la información, lo cual se determina tomando en consideración el costo en términos de dinero, tiempo, personal, la urgencia de la publicación, el carácter de la noticia y cualquier otro factor pertinente. *Colón Pérez v. Televicentro P.R., supra,* citando a *Torres Silva v. El Mundo, Inc., supra.*

Como señaláramos anteriormente, en nuestra jurisdicción se reconoce el privilegio del reporte o informe justo y verdadero. Este privilegio se encuentra cimentado en la idea de que el reportero actúa como sustituto del público en la observación de un evento. *Villanueva v. Hernández Class, supra.* Es menester recordar que la

aplicación de este privilegio es restringida por lo que, **el privilegio no aplica si se redacta un relato parcializado y subjetivo de lo ocurrido en los procedimientos o si se prueba que el demandado publicó la información maliciosamente con ánimo prevenido, con el fin de causar daño, o con conocimiento de la falsedad de la información.** *Meléndez Vega v. El Vocero de PR, supra,* pág. 202; *Villanueva v. Hernández Class, supra,* págs. 648–649.

Para que el privilegio sea aplicable, deben cumplirse dos requisitos. Primeramente, el reportaje tiene que ser justo en relación con el proceso que es objeto de información. *Íd,* pág. 647. El reporte es justo si captura la sustancia de lo acontecido y si toma en consideración el probable efecto que tendrá su publicación en la mente de un lector y oyente promedio. *Íd.* En segundo lugar, lo publicado tiene que ser cierto y reflejar la verdad de lo expresado o acontecido en el procedimiento llevado a cabo aun cuando la información que se brinda en el procedimiento judicial, legislativo u oficial sea falsa o libelosa. *Íd.* **Para que se cumpla con el elemento de la veracidad de lo relatado, no es necesario que lo publicado sea exactamente "correcto", sino que bastará con que se publique un extracto sustancialmente correcto de lo ocurrido**. *Íd.*

El 29 de marzo de 2023, la señora Fabery Faría publicó un vídeo en las redes sociales reaccionando a una noticia publicada el 21 de marzo de 2023 por un periódico de circulación general en Puerto Rico. Recordemos que en la noticia se reportó que el Negociado arrestó a dos individuos y se alegó que estos estaban vinculados a la organización criminal de Nelson Torres Delgado, conocido como "El Burro". Que uno de ellos, el señor Miranda Torres, trabajaba como guardia de seguridad para Automeca sin los debidos permisos para ello. Que el Negociado refirió el asunto a la sección de

detectives para verificar si la compañía empleó al señor Miranda Torres y bajo qué condiciones ya que esta información era preliminar.

Sobre esto, la señora Fabery Faría comentó que ella "**no estudiaría ni trabajaría en un lugar donde la seguridad que es lo que esta supuestamente verdad está guardando por mi está vinculada con el bajo mundo y más con gatilleros**". También comentó que los padres y estudiantes debían tener cuidado al matricularse ya que podían morir en Automeca. La apelada finalizó el vídeo exhortando al público a no matricularse en Automeca.

Ciertamente, la señora Fabery Faria basó sus comentarios en la noticia publicada el 21 de marzo de 2023. Ello no obstante, entendemos que sus comentarios fueron más allá de los reportado en el artículo noticioso. Como puede notarse, el artículo reportó que el Negociado arrestó a dos hombres vinculados con una organización criminal y que uno de ellos laboraba como guardia de seguridad en Automeca sin los debidos permisos para ello. En el artículo se señaló que toda esta información era preliminar. Ahora bien, la señora Fabery Faría no solo compartió los hallazgos del Negociado según fueron reportados en el artículo, sino que añadió su opinión al respecto. Las expresiones de la apelada fueron en el sentido de que Automeca estaba vinculada a la organización criminal antes mencionada y que sus estudiantes corrían peligro y hasta el riesgo de morir.

Contrario a las alegaciones de la señora Fabery Faría, no vemos cómo estas expresiones pueden estar protegidas. Primeramente, la apelada debió prever que al hacer expresiones exhortando al público a no matricularse en Automeca y alegar que podrían morir en los predios de la apelante ocasionaría algún daño a la imagen de Automeca. Segundo, de los hechos surge con meridiana claridad que la señora Fabery Faría utilizó como fuente el artículo publicado por El Nuevo Día. Sin embargo, las expresiones

de la apelada distorsionaron los hechos según reportados en el artículo noticioso sin una fuente confiable que respaldara sus comentarios. De manera que, aunque sus expresiones se basaron en una fuente confiable, la señora Fabery Faría no hizo cotejo alguno sobre la veracidad de sus expresiones.

De modo que, si bien es cierto que no era necesario que sus expresiones fuesen correctas, el extracto de la publicación sí tenía que ser un extracto sustancialmente correcto de lo ocurrido. Es forzoso concluir que las expresiones de la apelada no fueron un extracto sustancialmente correcto de lo ocurrido. Igualmente, surgen serias dudas sobre la ausencia del elemento de malicia o negligencia en las expresiones de la señora Fabery Faría. Particularmente, si tomamos en consideración que esta trabaja como gerente de mercadeo para la institución educativa que resulta ser competencia de Automeca. Ante esta realidad, consideramos meritorio que el caso sea devuelto al foro primario para que se celebre una vista en su fondo y se pueda atender en sus méritos.

**IV.**

Por los fundamentos que anteceden, revocamos la *Sentencia* apelada. En consecuencia, ordenamos la devolución del caso al foro primario para la continuación de los procedimientos que atienda el asunto en sus méritos.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones